**IN RE Petition for DISCIPLINARY ACTION AGAINST Patrick Chinedu NWANERI, a Minnesota Attorney, Registration No. 0322003.**

A16-0057

Supreme Court of Minnesota.

Filed: June 7, 2017

Susan M. Humiston, Director, Binh T. Tuong, Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Patrick C. Nwaneri, Saint Paul, Minnesota, pro se.

## OPINION

### PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility (Director) filed a petition for disciplinary action against respondent Patrick Chinedu Nwaneri. The petition alleged that Nwaneri filed an untimely brief, made a false statement under oath by signing and filing an affidavit containing false information, and then initially lied about the reason for the late filing during the disciplinary investigation. We appointed a referee, who concluded that Nwaneri committed the alleged misconduct and recommended a public reprimand. Nwaneri contends that the Director failed to comply with applicable rules during the disciplinary investigation, and that the false statement in the affidavit did not violate Minn. R. Prof. Conduct 8.4(c) and (d). Both parties challenge the recommended discipline. We reject Nwaneri's claim that the Director failed to comply with applicable rules during the disciplinary investigation, as well as Nwaneri's interpretation of Minn. R. Prof. Conduct 8.4(c) and (d). We further conclude that the appropriate discipline for Nwaneri's misconduct is a 30-day suspension.

## FACTS

■ Our recitation of the facts comes from the referee's findings. Those findings, and the legal conclusions the referee drew from them, are conclusive because neither party ordered a transcript of the hearing before the referee. *See* Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR).[1] We admitted Nwaneri to the practice of law in Minnesota on October 25, 2002. In 2013, Nwaneri represented a client in a personal injury action against the Minneapolis Public Housing Authority. The Minneapolis Public Housing Authority appealed the district court's denial of its motion to dismiss, and filed a brief in support of the appeal. Nwaneri's brief to the court of appeals was due on June 18, 2014. On May 23, 2014, Nwaneri filed a motion to dismiss the appeal and stay the briefing deadline until the court decided his motion. The court of appeals denied Nwaneri's motion to dismiss and retained the June 18 due date for his brief.

■ On June 18, 2014, Nwaneri filed a motion to extend the briefing deadline until July 21. Two days later, the court of appeals extended the due date for Nwaneri's brief to June 30. On June 30, 2014, Nwaneri signed affidavits of service for the brief to opposing counsel and the court of appeals, affixed postage to mailing envelopes containing the brief, and placed the envelopes on his receptionist's desk for

---

1. Nwaneri's repeated assertions that the findings are inaccurate demonstrate the reason for the rule: we cannot evaluate factual challenges without a transcript because "we cannot review the evidence supporting th[e] findings." *In re Dedefo,* 781 N.W.2d 1, 7 (Minn. 2010). Therefore, we accept the referee's findings and conclusions about what happened. *See In re Montez,* 812 N.W.2d 58, 66 (Minn. 2012).

pickup the next morning by the United States Postal Service. The affidavit of service on opposing counsel stated, in relevant part:

On June 30, 2014, I served on Appellant's Counsel, ... via United States Postal Service priority mail, postage prepaid, true, correct and conforming copies of the following: (i) Appellee/Respondent's Brief, and (ii) This Affidavit of Service.

Nwaneri's notarized signature, dated June 30, 2014, was included on the affidavit. But the brief was not mailed on June 30, as the affidavit stated, nor on July 1, the date Nwaneri expected it would be mailed. Rather, the brief was mailed on July 2.

Opposing counsel filed a complaint with the Office of Lawyers Professional Responsibility a week later. According to the complaint, post office tracking records showed that the brief was not mailed until July 2, 2014, despite the affidavit's assertion that it was mailed on June 30. In August 2014, the Director notified Nwaneri of the complaint against him and stated that the matter had been referred to the Second District Ethics Committee for investigation.

■ Nwaneri's explanation of the tardy service changed over time. In a letter to the District Ethics Committee investigator in September 2014, Nwaneri stated that he had placed the sealed, postage-paid envelopes containing the brief and affidavit of service on his receptionist's desk on June 30, expecting that the receptionist would give the envelopes to the mail carrier the next morning, on July 1, 2014. He explained that the receptionist was absent from work on July 1, and as a result, the office was not open when the mail carrier arrived to pick up outgoing mail for the day. This chain of events, Nwaneri stated, was the reason the brief was not mailed until July 2.

The District Ethics Committee investigator met with Nwaneri at his office the next month. At the meeting, the investigator requested a copy of the receipt for binding the appellate brief. When Nwaneri provided the receipt, it showed that the brief was bound on July 2, 2014. This fact is incompatible with Nwaneri's earlier statement that he sealed the envelopes containing the completed brief on June 30.

A week later, in a new letter to the District Ethics Committee investigator, Nwaneri changed his story. The new letter stated that, after Nwaneri had first blamed the late service on his receptionist's absence, he "required [his] office to review in detail what transpired during the preparation and mailing of Respondent's Brief." According to the letter, the office review revealed that the receptionist's absence was not the cause of the tardy service. Rather, Nwaneri now stated that sometime between June 30 and July 2, he became aware of errors in the brief. Nwaneri then removed the brief from the envelopes on the receptionist's desk and had the errors corrected. On July 2, 2014, Nwaneri had the revised brief bound and mailed. He paired the revised brief with the documents and envelopes prepared on June 30, including the original affidavit of service to opposing counsel, which was dated June 30, 2014. Nwaneri's new letter stated that, "in the haste to complete and file the Respondent's Brief, I inadvertently omitted to re-do or redraft the Affidavit of Service dated June 30, 2014. The incident was clearly an oversight and or omission."

The referee found that Nwaneri purposefully fabricated his initial statement that his receptionist's absence caused the late filing. The referee stated that the falsehood was intentional for three reasons: (1) "a last minute realization that [Nwaneri] had to delay submitting a brief

for which he already had sought an extension would certainly be memorable"; (2) "the passage of only two and a half months between the date of the purported mailing and the false statement would be unlikely to erase his memory of the need to redraft the brief"; and (3) "the importance to [Nwaneri] of a professional ethics investigation into the mailing of the brief would concentrate and focus [Nwaneri's attention] on the circumstances surrounding service of the brief." *Id.* The referee found no aggravating or mitigating factors.

The referee made three conclusions of law. First, Nwaneri violated Minn. R. Prof. Conduct 1.3 by failing to timely serve and file the court of appeals brief. Second, Nwaneri violated Minn. R. Prof. Conduct 3.3(a)(1), 4.1, 8.4(c), and 8.4(d) by knowingly signing an affidavit of service that contained false information. Finally, Nwaneri violated Minn. R. Prof. Conduct 8.1(a) and 8.4(c), and Rule 25, RLPR, by knowingly making a false statement to the District Ethics Committee investigator. Based on these findings and conclusions, the referee recommended that Nwaneri be publicly reprimanded.

## ANALYSIS

### I.

■ In his brief to this court, Nwaneri raises for the first time a claim that the disciplinary proceedings against him were improper.[2] He argues that the Director was required to follow the disciplinary recommendation offered by the Second District Ethics Committee's Investigation Report: a private admonition. Accordingly, he contends that the Director's decision to submit charges to a panel of the Lawyers Professional Responsibility Board, and that panel's decision that a petition for disciplinary action should be filed against him, were improper.

Nwaneri draws on Rule 7(b), RLPR, to make this argument. Rule 7(b), RLPR, provides that an investigator's report must include one of four recommendations: no discipline; an admonition; referral of the matter to a panel; or further investigation of the matter. It then states, "If the report recommends discipline not warranted or admonition, the investigator shall include in the report a draft letter of disposition in a format prescribed by the Director." *Id.* In this case, the investigator's report recommended an admonition. Nwaneri argues that because the report recommended an admonition, "the director [was] required to notify the Respondent accordingly, and terminate the ethics complaint proceedings."

Nwaneri misreads Rule 7(b), RLPR, and fails to reconcile it with Rule 8, RLPR, which gives the Director broad power to act independently. There is simply no textual support in Rule 7(b) for Nwaneri's claim that the Director must follow a district ethics committee's recommendation. Instead, the plain language of that rule states that a district ethics committee only makes a "recommendation," *see* Rule 7(b), RLPR, which is merely a suggestion about what should be done, *see Webster's Third New International Dictionary Unabridged* 1897 (3d ed. 2002) (defining a recommendation as "a statement expressing commendation or giving advice or counsel").

---

**2.** Nwaneri summarily claims that the Director's failure to follow the disciplinary recommendation of the Second District Ethics Committee violated his constitutional rights. He does not specify which constitutional provision the Director allegedly violated. Instead, he argues only that the Director failed to comply with applicable provisions of the Rules on Lawyers Professional Responsibility. As a result, Nwaneri's argument is properly characterized as a claimed violation of applicable rules.

Additionally, Rule 8, RLPR, gives the Director broad authority. Rule 8(a), RLPR, states, "At any time, with or without a complaint or a District Committee's report, and upon a reasonable belief that professional misconduct may have occurred, the Director may make such investigation as the Director deems appropriate as to the conduct of any lawyer . . . ." The Director also has the authority to determine the appropriate disposition following the investigation of a complaint, including submitting the matter to a panel if "the Director concludes that public discipline is warranted." Rule 8(d)(4)(i), RLPR. Thus, the Director was not required to end the investigation upon receiving the Second District Ethics Committee's Investigation Report, as Nwaneri argues, and the disciplinary proceedings that occurred after the Director received the report were authorized under Rule 8.[3] Accordingly, we hold that the Director complied with applicable rules when she did not accept the recommendation of the District Ethics Committee and filed a disciplinary petition against Nwaneri.

## II.

■ Nwaneri asserts that, as a matter of law, his false affidavit of service did not violate Minn. R. Prof. Conduct 8.4(c) and 8.4(d). Even absent a transcript, "[w]e will . . . review the referee's interpretation of the Rules of Professional Conduct" de novo. *In re Montez*, 812 N.W.2d 58, 66 (Minn. 2012). Here, the referee concluded that Nwaneri violated Rules 8.4(c) and 8.4(d) by signing and filing an affidavit of service containing false information. Nwaneri argues that Rule 8.4(c), which prohibits, in part, dishonest conduct, and Rule 8.4(d), which prohibits conduct preju-

dicial to the administration of justice, do not apply to a lawyer's conduct in the course of representing a client, and thus do not apply to his signing and filing a false affidavit of service. We disagree.

■ The plain language of Rules 8.4(c) and (d) does not support Nwaneri's interpretation. *See* Minn. R. Prof. Conduct 8.4 ("It is professional misconduct for a lawyer to: . . . (c) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation; [or] (d) engage in conduct that is prejudicial to the administration of justice . . . ."). Both rules broadly prohibit the conduct listed, and neither is limited to behavior unrelated to the representation of clients. Indeed, we have regularly applied these rules when the misconduct arises in the course of representing a client. *See, e.g., In re Gillette*, 886 N.W.2d 214, 215 (Minn. 2016) (concluding that an attorney violated Minn. R. Prof. Conduct 8.4(c) by making multiple misrepresentations to a client); *In re Grigsby*, 815 N.W.2d 836, 844 (Minn. 2012) (concluding that an attorney violated Minn. R. Prof. Conduct 8.4(c) and (d) by knowingly making false statements to a court); *In re Lundeen*, 811 N.W.2d 602, 607 (Minn. 2012) (concluding that an attorney violated Minn. R. Prof. Conduct 8.4(c) and (d) by, among other things, failing to communicate with clients). We therefore hold that Minn. R. Prof. Conduct 8.4(c) and 8.4(d) apply to a lawyer's conduct committed in the course of representing a client.

## III.

■ We now address the appropriate discipline to impose for Nwaneri's misconduct. The referee recommended a public

---

**3.** Nwaneri repeated this argument in a motion to dismiss the petition for disciplinary action that he filed one week before oral argument. We deny Nwaneri's motion be-

cause the argument in the motion is also inconsistent with the plain language of Rule 8.

reprimand. The Director argues that we should suspend Nwaneri for at least 30 days. Nwaneri, on the other hand, argues that he should receive no discipline, or in the alternative, an admonition. We agree with the Director.

We place great weight on the referee's recommended discipline, but we retain ultimate responsibility for determining the appropriate sanction. *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011). The purpose of discipline for professional misconduct is "not to punish the attorney but rather to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Rebeau*, 787 N.W.2d 168, 173 (Minn. 2010). We consider four factors in determining the appropriate disciplinary sanction: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Nelson*, 733 N.W.2d 458, 463 (Minn. 2007). Finally, in seeking to impose consistent discipline, we consider similar cases, as well as aggravating and mitigating circumstances. *In re Albrecht*, 779 N.W.2d 530, 540 (Minn. 2010).

Nwaneri committed three acts of misconduct: filing an untimely brief, knowingly signing and filing an affidavit of service that contained false information, and making a false statement to the District Ethics Committee investigator. Two of Nwaneri's acts of misconduct—the affidavit containing false information and the false statement to the District Ethics Committee investigator—involved dishonesty. "Honesty and integrity are chief among the virtues the public has a right to expect of lawyers." *In re Ruffenach*, 486 N.W.2d 387, 391 (Minn. 1992). And one of those dishonest acts involved a false statement to a court, which we have already held is significant misconduct. *See In re Houge*, 764 N.W.2d 328, 338 (Minn. 2009) (stating that a breach of the duties of honesty and integrity to the court "warrants severe discipline."); *In re Schmidt*, 402 N.W.2d 544, 548 (Minn. 1987) (stating that "courts do not hesitate to impose severe discipline" on lawyers who make false statements to a court).

Additionally, noncooperation "by itself, may warrant indefinite suspension and, when it exists in connection with other misconduct, noncooperation increases the severity of the disciplinary sanction." *Nelson*, 733 N.W.2d at 464. Noncooperation involving dishonesty is especially serious. We have repeatedly held that a lack of truthfulness or candor warrants severe discipline. *See, e.g., In re Dedefo*, 752 N.W.2d 523, 532 (Minn. 2008); *In re Lochow*, 469 N.W.2d 91, 99 (Minn. 1991).

To determine the cumulative weight of an attorney's violations, we distinguish between "a brief lapse in judgment or a single, isolated incident" and multiple instances of misconduct "occurring over a substantial amount of time." *In re Murrin*, 821 N.W.2d 195, 208 (Minn. 2012) (citation omitted) (internal quotation marks omitted). The "cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *In re Oberhauser*, 679 N.W.2d 153, 160 (Minn. 2004).

Nwaneri's late filing and false affidavit were part of a single incident, but his lie to the investigator 72 days later was a separate instance of misconduct. The referee, however, found "no showing of a pattern of intentional misrepresentations." *See In re Eskola*, 891 N.W.2d 294, 301 (Minn. 2017) (stating that whether there was a pattern of a particular type of misconduct is rele-

vant to the cumulative weight analysis). Nevertheless, the fact that the two instances of misconduct occurred over the course of 72 days weighs in favor of imposing more severe discipline on Nwaneri.

 To determine the harm to the public and legal profession, we consider the number of clients harmed and the extent of their injuries. *Coleman*, 793 N.W.2d at 308. Nwaneri's misconduct did not harm any client. But making false statements to a court harms the public and the legal profession. *See Lochow*, 469 N.W.2d at 99 (rejecting an attorney's claim that his false statements to a court did no harm because they were immaterial to the issue being litigated and explaining that the "proper focus" was on "the fact that misrepresentations were made before a judicial officer"); *Schmidt*, 402 N.W.2d at 548 ("To a great degree our system for the administration of justice is based upon the integrity of the lawyers who handle litigation before the courts."). In addition, failing to cooperate with a disciplinary investigation harms the legal profession by undermining the public's confidence in the profession's ability to self-regulate. *In re Brost*, 850 N.W.2d 699, 705 (Minn. 2014).

 We must next examine any aggravating and mitigating factors, the presence of which can affect the appropriate sanction. *See In re Fairbairn*, 802 N.W.2d 734, 744 (Minn. 2011). The referee found no aggravating or mitigating factors. "[I]n the absence of a transcript we will not review a referee's lack of findings as to aggrava-

ting or mitigating circumstances." *Montez*, 812 N.W.2d at 67.

Finally, we look to similar cases for guidance. *In re Kurzman*, 871 N.W.2d 753, 759 (Minn. 2015). We have suspended attorneys whose only misconduct was making false statements under oath or to a court.[4] *See In re Warpeha*, 802 N.W.2d 361, 361 (Minn. 2011) (order) (imposing a 60-day suspension on an attorney who made false statements about his criminal history during voir dire as a potential juror); *In re Winter*, 770 N.W.2d 463, 466, 470 (Minn. 2009) (imposing a 120-day suspension on an attorney who made a false statement in a motion in an immigration proceeding, causing another lawyer to perform many hours of unnecessary work); *In re Czarnik*, 759 N.W.2d 217 at 224 (2009) (imposing a 90-day suspension on an attorney who falsely stated during a deposition that he had not been paid by a former employer during the period at issue); *In re Scott*, 657 N.W.2d 567, 568 (Minn. 2003) (order) (imposing a 30-day suspension on an attorney who made false statements to the court in the attorney's divorce and custody proceeding). Here, Nwaneri did more than make a false statement under oath and to a court in his affidavit of service. He also made knowingly false statements to the District Ethics Committee investigator with the intent to mislead her, and he failed to submit a timely brief.

Nwaneri argues that we should impose no discipline and dismiss the petition for disciplinary action. In support, he relies on *In re Appert*, 315 N.W.2d 204 (Minn.

---

4. We have publicly reprimanded an attorney whose only misconduct was knowingly submitting false documents to a court. *See In re Finley*, 261 N.W.2d 841, 845-46 (Minn. 1978) (publicly reprimanding an attorney who, acting in his capacity as a notary public, falsely certified that four documents necessary to obtain a permit to conduct bingo games were signed and sworn in his presence). *Finley* is distinguishable, however, because it was a "case of first impression"; we stated that "[s]imilar violations by members of the bar in future cases may well be dealt with more severely"; and we concluded that the lawyer did not know that three of the four documents were forged, had no intent to defraud, and had been cooperative with the Director. *See id.* at 846.

1981). *Appert*, however, is distinguishable because in that case we determined that disciplining an attorney for advertising that was not false, fraudulent, deceptive, or misleading would have violated the attorney's First Amendment rights and that the Director had failed to prove the remaining allegations of unprofessional conduct. *See id.* at 212, 214-15. This case does not involve either of these concerns.

We conclude, therefore, that Nwaneri's misconduct warrants a suspension. In light of the specific misconduct that Nwaneri committed and the lack of aggravating and mitigating factors, the appropriate discipline is a 30-day suspension.

Accordingly, we order that:

1. Respondent Patrick Chinedu Nwaneri is suspended from the practice of law for a minimum of 30 days, effective 14 days from the date of this opinion.

2. Respondent shall comply with Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals), and shall pay $900 in costs, *see* Rule 24(a), RLPR.

3. Respondent shall be eligible for reinstatement to the practice of law following the expiration of the suspension period provided that, not less than 15 days before the end of the suspension period, respondent files with the Clerk of the Appellate Courts and serves upon the Director an affidavit establishing that he is current in continuing legal education requirements; has complied with Rules 24 and 26, RLPR; and has complied with any other conditions for reinstatement imposed by the court.

4. Within 1 year of the date of this opinion, respondent shall file with the Clerk of the Appellate Courts and serve upon the Director proof of successful completion of the written examination required for admission to the practice of law by the State Board of Law Examiners on the subject of professional responsibility. Failure to timely file the required documentation shall result in automatic re-suspension, as provided in Rule 18(e)(3), RLPR.