PER CURIAM.
*31 The Director of the Office of Lawyers Professional Responsibility filed a petition for disciplinary action against respondent, Bobby Gordon Onyemeh Sea, alleging violations of Minn. R. Prof. Conduct 3.3(a)(1), for knowingly making false statements to a tribunal; Rule 4.1, for making false statements to others; and Rule 8.4(c)-(d), for engaging in dishonesty, fraud, deceit or misrepresentation, and conduct prejudicial to the administration of justice. These allegations stemmed from a series of false statements and material omissions that Sea made to the district court after he failed to appear for a scheduled hearing.
Following an evidentiary hearing, a referee found that Sea knowingly made false statements to the court and opposing counsel, delayed criminal proceedings, and caused harm to the public and legal profession. Due to his misconduct and the existence of multiple aggravating factors, the referee recommended that Sea be indefinitely suspended from the practice of law and ineligible to petition for reinstatement for a period of 120 days. We conclude that the referee did not clearly err by finding that Sea violated Minn. R. Prof. Conduct 3.3(a)(1), 4.1, 8.4(c)-(d) and that the referee's recommended discipline is the appropriate sanction here.
FACTS
The referee made the following findings. Sea was admitted to practice law in Minnesota in May 1998. He is an experienced attorney, especially in criminal trials, as he has appeared in between 35 and 40 trials in his career. In 2013, we indefinitely suspended him from the practice of law, with no right to petition for reinstatement for a minimum of 20 months. In re Sea (Sea I ), 832 N.W.2d 851, 852 (Minn. 2013) (order). He was suspended due to his federal conviction for filing materially false federal income-tax returns, in violation of Minn. R. Prof. Conduct 8.4(b) ("commit[ting] a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respect"), and 8.4(c) ("engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation"). See 832 N.W.2d at 851. In December 2015, we reinstated Sea and placed him on supervised probation for 2 years. In re Sea (Sea II ), 872 N.W.2d 249, 249-50 (Minn. 2015) (order).
Sea represented F.B., a defendant in a first-degree criminal sexual conduct case. On the morning of April 18, 2017, the first day of trial, the parties appeared before the Wright County District Court to address pretrial issues, including motions to quash subpoenas that Sea had served on two witnesses. The district court recessed for lunch at 11:30 a.m., instructed the attorneys to return at 1:20 p.m., and ordered the witnesses to appear as well in order to resolve the motions to quash. The court and counsel knew that the court was available that day only until 2:25 p.m.
At some point during the break, the Wright County prosecutor received a call from Sea advising him that Sea would be a *32 half-hour late. He said that he was on his way back from Saint Paul because he had to pick up his spare pair of eyeglasses after his original pair broke. When Sea did not appear, the Wright County clerk called him at 1:46 p.m. At that time, Sea told the clerk that he would be another half-hour late. The clerk called Sea at 2:01 p.m. and again Sea said that he would be another half hour. He was called a third time at 2:22 p.m., and Sea told the clerk he was in Maple Grove. The district court began the hearing at 2:24 p.m. without Sea. When Sea finally arrived at Wright County District Court at 2:41 p.m., the proceedings had ended for the day.
The referee found that the criminal trial was delayed due to Sea's non-appearance because the district court was unable to rule on pretrial motions and two defense witnesses under subpoena missed work and were unable to testify. One of the witnesses was scheduled to leave the country the next day.
Additionally, Sea's client, F.B., was unrepresented during the proceedings and unaware of his attorney's whereabouts. The district court judge testified at an evidentiary hearing held by the referee that she was concerned for the defendant and was unable to communicate with him because his attorney was not present. The defendant had neither the assistance of counsel nor the ability to consult with counsel until Sea finally arrived.
At the opening of court proceedings the next day, the district court conducted a private, sealed, transcribed inquiry with Sea about his excuse, if any, for being late. Sea stated that his absence was due to his eyeglasses.
The court resumed public proceedings and asked Sea to explain where he was the afternoon before. Sea responded:
Once again, good morning, Your Honor. Unfortunately yesterday I broke my glasses. I have bifocal glasses, and I cannot see at all without them. And unfortunately the one I have is in Saint Paul. And I had to-I had to run down there to get it-get my spare one. And I thought-I'm showing you the one I wore yesterday before (shows glasses) it's broken. It's bifocal. I cannot see at all without them. So I had to run down to Saint Paul. I don't have the court's phone numbers, so I called [M.E., the prosecutor]. And I told him, you know, that I will be back in Saint Paul after picking up my-my spare glasses. I thought I could make it back before 1:30, or maybe a few minutes late, you know. Unfortunately, the traffic was bad and I was not able to. I could not be able to see anything, Your Honor, yesterday at all without the glasses. And I thought to be able to read anything or see anyone, I must have this. Driving down with this, Your Honor (showing glasses) I have this-like this in my eye while I'm driving. And I could not operate my vehicle even safely on my way down there. Upon my return, Your Honor, I apologized to [M.M., counsel for defense witness scheduled to potentially testify the afternoon of April 18], you know, and the-and his client [potential defense witness]. I also apologized to [M.E.]. Now right now, Your Honor, I apologize to the court, you know. I am very sorry, you know. It wasn't-I mean I didn't plan on not being here. I was just hoping that I can rush down here and pick it up and come-and come right back maybe a few minutes late. But unfortunately the traffic was very bad and I wasn't able to get here. When I-when I got here though, [M.M.] and his clients were still here. So we were able to-to discuss more in details about the testimony of his witnesses. Once again, Your Honor, I sincerely apologize.
*33 When the court pressed Sea again a few days later, after he was once again 30 minutes late for the proceedings, for an explanation for his absence on April 18, Sea again only referenced his broken glasses and traffic as reasons for causing his delay.
The statements that Sea made to the district court and the prosecutor regarding the reason for his lateness were false. In reality, Sea was driving to and from Dakota County District Court to represent another client, A.H., in a bail hearing on April 18. Sea filed a certificate of representation in Dakota County on April 17, 2017, and was aware that the Dakota County proceeding for which he had filed a Notice of Appearance was scheduled for 11:00 a.m. on April 18, 2017. Sea told the Dakota County clerk that he would arrive by 12:30 p.m. for the hearing. In his testimony at the evidentiary hearing, Sea admitted that he did not inform the Wright County District Court about the bail hearing in Dakota County because he believed that he "would have sufficient time to travel from Wright County to Dakota County" during the lunch recess of the Wright County proceedings. He testified that his glasses broke and he had to go to Saint Paul first to pick up his spare glasses before going to Dakota County. When Sea arrived in Dakota County the court had to call an interpreter and the proceedings were delayed while waiting for the interpreter to arrive. Sea testified that once the bail hearing began it "took maybe five to ten minutes at the most."
Sea never mentioned the bail hearing to either the Wright County District Court or opposing counsel during any of the many times he was asked about his whereabouts on the afternoon of April 18. At the evidentiary hearing, Sea admitted that it was wrong not to tell the Wright County District Court about his appearance in Dakota County and apologized for that omission. He maintained that he never intended to deceive the court and continued to argue that his statements regarding his eyeglasses were true. The referee rejected this testimony and found that Sea "[did] not recognize the wrongful nature of his misconduct, refused to acknowledge committing any wrongdoing and failed to exhibit genuine remorse for his misconduct" because Sea "continued to deny his statements were false."
After learning that Sea had actually been driving to and from Dakota County representing another client and Sea was still untruthful about his whereabouts, the district court imposed sanctions. It ordered Sea to reimburse Ridgeview Medical Center (where the two witnesses under subpoena were employed) $1,712.94. Sea paid the sanctions.
In the proceedings before the referee, Sea offered an explanation for his conduct. He testified that he showed his broken glasses to the prosecutor and the attorney for one of the witnesses and apologized for being late when he finally arrived at the Wright County District Court. Both the prosecutor and the attorney testified similarly. The district court judge also testified that Sea showed her a pair of glasses on the morning of April 19, but she said that she could not tell whether or not they were broken.
After holding an evidentiary hearing, the referee found that Sea repeatedly made false statements, and failed to correct those false statements, to the district court and opposing counsel by stating that his absence was due to broken eyeglasses and traffic, rather than disclosing that he went to Dakota County. This misconduct, the referee found, violated Minn. R. Prof. Conduct 3.3(a)(1), 4.1, 8.4(c)-(d). Rather than focusing on the truthfulness of Sea's broken glasses, the referee stated that the *34 main issue was what he did not tell the district court.[1] The referee also concluded that Sea delayed the criminal trial and caused harm to the public and legal profession by failing to appear for the pretrial hearing, in violation of Minn. R. Prof. Conduct 8.4(d).
The referee concluded that Sea's substantial experience in the practice of law in general, and criminal defense in particular, his prior disciplinary history, and his probationary status at the time of the incident were aggravating factors. He also found that Sea's conduct was intentional and the product of a selfish motive, and that Sea failed to acknowledge the wrongful nature of his dishonest conduct and exhibit genuine remorse, thus aggravating the violation further. The referee recommended that Sea be indefinitely suspended from the practice of law and ineligible to apply for reinstatement for a period of 120 days.
ANALYSIS
I.
The referee's findings and conclusions of law are not binding on our court because Sea ordered a transcript of the disciplinary hearing. See In re Albrecht , 779 N.W.2d 530, 535 (Minn. 2010). But we give " 'great deference to a referee's findings and will not reverse those findings unless they are clearly erroneous, especially in cases where the referee's findings rest on disputed testimony or in part on respondent's credibility, demeanor, or sincerity.' " Id. (quoting In re Wentzell , 656 N.W.2d 402, 405 (Minn. 2003) ). Findings "are clearly erroneous only 'when they leave us with the definite and firm conviction that a mistake has been made' " by the Director or referee. In re MacDonald , 906 N.W.2d 238, 244 (Minn. 2018) (quoting In re Glasser , 831 N.W.2d 644, 646 (Minn. 2013) ).
Sea argues that the statements he made regarding his eyeglasses and the traffic delays were not false and therefore he did not violate the Minnesota Rules of Professional Conduct.[2] We disagree. Sea contends that, because the referee found Sea's statements about his broken eyeglasses and having to go to his office in Saint Paul to pick up a spare pair were false, the referee clearly erred. The referee rejected Sea's testimony from the evidentiary hearing that those were true statements. The referee has the power to do so. See In re Farley , 771 N.W.2d 857, 863 (Minn. 2009) (holding that a referee may reject testimony). Sea maintains that this finding is clearly erroneous because several witnesses testified that they saw his broken glasses after he returned to Wright County District Court on April 18. But the testimony did not establish when exactly the glasses broke or that Sea retrieved the pair of glasses he was wearing from his office in Saint Paul.
Regardless of whether or when Sea's glasses were broken, Sea misses the point in making this argument-he made other false statements and intentionally omitted crucial facts. Although Sea told the prosecutor that he was on his way back from Saint Paul after picking up his spare glasses, Sea was actually returning from A.H.'s bail hearing in Dakota County District *35 Court. In his private and public statements to the court on April 19 and April 24, Sea expressly said that the only reasons he was late was due to his broken glasses and traffic, when these were not the only reasons.[3] Thus, the referee's conclusion that Sea was untruthful is not clearly erroneous. Sea's blatant omission of facts also constitutes false statements and a violation of the rules.
Sea not only knowingly made false statements to the district court, he also knowingly omitted key information that he should have shared with the court. Even if Sea was truthful regarding his eyeglasses and his need to drive back to Saint Paul to pick up a spare pair, he knowingly made a false statement to opposing counsel and the court when he claimed that he was on his way directly from Saint Paul to Wright County, instead of disclosing that he had made a significant detour to Dakota County District Court. The Wright County District Court asked Sea multiple times about the reasons for his absence and he consistently failed to tell the truth.
Sea's knowingly false statements to the court, and his failure to correct those false statements, violate Minn. R. Prof. Conduct 3.3(a)(1), 4.1, and 8.4(c), even though the false statements were about Sea's whereabouts, rather than any facts or material information related to his client's case. See, e.g. , In re Warpeha , 802 N.W.2d 361, 361 (Minn. 2011) (order) (holding that "making false statements regarding [attorney's] criminal history while under oath during voir dire as a potential juror in a felony criminal matter" was a violation Rules 8.4(c)-(d), even though this conduct was completely separate from the representation of a client).
The referee's findings and conclusions of law regarding misconduct by Sea are not clearly erroneous.
II.
Although we give the referee's findings significant deference, we have the ultimate discretion as to the imposition of discipline. In re Nathanson , 812 N.W.2d 70, 78 (Minn. 2012). "The purpose of discipline for professional misconduct is not to punish the attorney but to protect the public and the judicial system, and to deter future misconduct by the disciplined attorney and other attorneys." Id. "To determine the appropriate discipline we consider four factors: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violation; (3) the harm to the public; and (4) the harm to the legal profession." Id. at 79 (citation omitted) (internal quotation marks omitted). We also consider aggravating and mitigating circumstances and the discipline imposed in similar cases. See In re Tigue , 900 N.W.2d 424, 431 (Minn. 2017). Although we "look[ ] to similar cases for guidance on the appropriate discipline, we tailor the discipline to the specific facts of each case." In re Greenman , 860 N.W.2d 368, 376 (Minn. 2015).
A. Nature of the Misconduct
Sea agreed to represent a new client at a bail hearing in Dakota County on April 18, 2017, even though he was fully aware that he had a pre-existing obligation to represent another client in a criminal felony trial in Wright County that same day. He was so aware of this conflict that he called the Dakota County clerk and told the clerk what time he planned to arrive (between the morning and afternoon sessions *36 of the Wright County trial). He did not advise the Wright County District Court, court clerk, or prosecutor of his plan to attend a bail hearing in another county. He failed to tell opposing counsel the truth on April 18 and later failed, on multiple occasions, to be truthful with the court. Sea's false statements and intentional omissions violate Minn. R. Prof. Conduct 3.3(a)(1), 4.1, and 8.4(c).
We take issues of attorney dishonesty seriously. We have held that dishonesty in statements to a tribunal is significant misconduct. See, e.g. , In re Nwaneri , 896 N.W.2d 518, 525 (Minn. 2017) (stating that an attorney making a false statement to a tribunal is significant misconduct); In re Ruffenach , 486 N.W.2d 387, 391 (Minn. 1992) ("Honesty and integrity are chief among the virtues the public has a right to expect of lawyers. Any breach of that trust is misconduct of the highest order and warrants severe discipline."). Sea's misconduct is significant and warrants discipline.
B. Cumulative Weight
In reviewing the cumulative weight of an attorney's misconduct, we first look to the total violations in this matter. Albrecht , 779 N.W.2d at 541. "When assessing the cumulative weight of the violations, we distinguish 'a brief lapse in judgment or a single, isolated incident' of misconduct from multiple instances of misconduct 'occurring over a substantial amount of time.' " In re Michael , 836 N.W.2d 753, 766 (Minn. 2013) (quoting In re Murrin , 821 N.W.2d 195, 208 (Minn. 2012) ). Here, Sea committed misconduct by making false statements on April 18 to opposing counsel about his whereabouts and the reasons for his delay in returning for trial, and repeated those statements to the court on April 19 and April 24. Sea's conduct is not a "brief lapse in judgment or a single, isolated incident."
C. Harm to the Public and Legal Profession
We next look to the harm Sea's misconduct caused to the public and the legal profession. We place great weight on the reputation of the legal community as honest and truthful and have noted that "making false statements to a court harms the public and the legal profession." Nwaneri , 896 N.W.2d at 526 ; see also In re Jensen , 542 N.W.2d 627, 634 (Minn. 1996) ("[W]e have suspended attorneys for misrepresentations made to our judicial officers."); In re Schmidt , 402 N.W.2d 544, 548 (Minn. 1987) ("[W]hen ... a lawyer demonstrates a lack of that truthfulness and candor that the courts have a right to expect of their officers[,] ... courts do not hesitate to impose severe discipline."). Here, Sea made false statements to the court, and others, to hide his appearance on behalf of another client in a different county when he had an obligation to an existing client. Sea's actions undermine public confidence in the judicial system.
Sea also caused harm to his client and others by failing to appear and delaying the litigation, resulting in a violation of Minn. R. Prof. Conduct 8.4(d). Sea's Wright County client was harmed by his misconduct because he was left unrepresented and confused as to where his attorney was on the afternoon of April 18, 2017. At the evidentiary hearing, the district court judge specifically testified that the litigation was delayed and that she was concerned about the defendant. The district court judge also specifically noted that Sea's absence caused significant anxiety to one witness. Sea's absence also caused monetary loss to those who were present for the trial, prompting the district court to impose sanctions against Sea. Moreover, Sea's dishonesty and failure to *37 appear has also harmed public confidence in the legal system generally.
D. Aggravating and Mitigating Circumstances
We must also take into account the presence of aggravating and mitigating factors. The referee determined that there are several aggravating factors: Sea's experience, the fact that he was on supervised probation at the time, and his intentional conduct and lack of remorse. The referee found no mitigating factors.
Sea was admitted to practice law in Minnesota in May 1998. He was indefinitely suspended from the practice of law in 2013, with no right to petition for reinstatement for 20 months because he filed materially false federal income-tax returns in violation of Minn. R. Prof. Conduct 8.4(b). Sea I , 832 N.W.2d at 851-52. He was reinstated and placed on supervised probation for 2 years in December 2015. Sea II , 872 N.W.2d at 249-50. Sea engaged in this misconduct less than 2 years later, in April 2017. "The law is clear: misconduct while on probation is an aggravating factor, whether the rule violations are the same or different." In re Kurzman , 871 N.W.2d 753, 758 (Minn. 2015). Sea's probationary status at the time of his misconduct is an aggravating factor that warrants significant discipline. Id.
The referee found Sea's prior discipline was another aggravating factor. We reject Sea's argument that his record is a mitigating factor (or that lesser discipline is appropriate) because his previous discipline was not for misconduct in the practice of law. "Attorneys with a disciplinary history are 'expected to show a renewed commitment to ethical behavior.' " Id. (quoting In re Coleman , 793 N.W.2d 296, 308 (Minn. 2011) ). Further, "previous misconduct of the same type is considered an aggravating factor when determining the appropriate discipline." In re Cutting , 671 N.W.2d 173, 175 (Minn. 2003) ; see also In re Milloy , 571 N.W.2d 39, 46 (Minn. 1997) ("This court looks closely at prior misconduct, especially when current misconduct occurs while an attorney is on probation."). Sea's prior misconduct involved dishonesty and deceit similar to his misconduct here, even though the misconduct was not in the practice of law. We agree with the referee that Sea's previous dishonest conduct is an aggravating factor in determining discipline.
The referee found that Sea's lengthy experience as an attorney was an aggravating factor. We agree.[4] In re Rebeau , 787 N.W.2d 168, 176 (Minn. 2010) ("[S]ubstantial experience as a lawyer may constitute an aggravating factor.").
Sea also challenges the referee's findings that his misconduct was intentional and was the product of a selfish motive, both of which further aggravate his misconduct. Sea intentionally chose to take on another client for a bail hearing when he knew he had an existing client obligation. We are cautious to not "double count" behavior as a violation and an aggravating factor. See In re Tayari-Garrett , 866 N.W.2d 513, 520 n.4 (Minn. 2015) ("As a matter of fairness, we question whether the intentional nature of an attorney's misconduct can be an aggravating factor when the rules of professional conduct at issue require proof of intent."). Because of this, *38 we reject the referee's finding that the intentional nature of Sea's misconduct is an aggravating factor for the reason that we have already considered his "knowingly false statement" as a violation of rule 3.3(a)(1). In re Ulanowski , 800 N.W.2d 785, 801 (Minn. 2011) ("We review challenges to the facts and the application of the rules to the facts for clear error."). But, since Rule 8.4(d), which makes it a violation to "engage in conduct that is prejudicial to the administration of justice," does not have an intent requirement, it is appropriate to consider the intentional nature of that conduct as an aggravating factor. See id. at 802 ("Intentional misconduct can aggravate a violation of the rules."); see also In re Fairbairn , 802 N.W.2d 734, 747 (Minn. 2011) ("An attorney's selfish ... motive[ ] may aggravate misconduct.").[5]
Last, Sea argues that the referee erred by finding lack of remorse as an aggravating factor. In our analysis, we look to whether an attorney is remorseful for his misconduct and whether the attorney acknowledges the wrongful nature of the conduct. See, e.g. , Tayari-Garrett , 866 N.W.2d at 520 (relying on the referee's finding that the attorney's misconduct was aggravated by a lack of remorse). At the evidentiary hearing, the referee rejected Sea's testimony on the issue of remorse, and we do so here as well.[6] Although Sea claimed that he apologized to the district court for his omission, his apology was for tardiness; he never apologized for lying to the district court. Sea admitted that "he could have done better" and "should have disclosed to the Wright County Court that after picking up his spare eyeglasses, he also went to Dakota County court to represent another client in a bail hearing." The dissent also takes issue with this aggravating factor, but throughout the investigation and the hearing, Sea maintained that his actions were not intentional misconduct, thus attempting to downplay the conscious choice he made to omit crucial information regarding his failure to appear and the justification for his absence.
E. Comparison to Precedent
Finally, we look to similar cases for guidance in determining what discipline is appropriate. We have imposed significant discipline for making false statements to a tribunal. We held in Tayari-Garret and In re Lundeen that an attorney's failure to appear at trial and subsequent multiple false statements to the court about the reason for the absence violated Minn. R. Prof. Conduct 3.3(a)(1), 4.1, and 8.4(c)-(d). Tayari-Garrett , 866 N.W.2d at 518 ; In re Lundeen , 811 N.W.2d 602, 606-07 (Minn. 2012). In Tayari-Garrett , the attorney flew to Paris for her brother's wedding instead of appearing for her client's hearings in Minneapolis. 866 N.W.2d at 515. She was *39 fully aware of the scheduling conflict and never disclosed to the court that she was in Paris. Id. at 515-16. We imposed a 120-day suspension on Tayari-Garret due to her misconduct and the aggravating factors of a selfish motive, lack of remorse, and refusal to acknowledge the wrongful nature of her misconduct. Id. at 520-21. In Lundeen , an attorney was arrested for suspected drug possession during his representation of a client in a criminal trial and then failed to appear at an unrelated proceeding and made false statements to the court regarding the reasons for his absence. 811 N.W.2d at 606-07. Lundeen was disbarred due to this and other misconduct, and the aggravating factor of prior disciplinary history of similar dishonest misconduct. Id. at 609.
But the level of discipline imposed in previous cases for making false statements does vary based on the facts. See, e.g. , Michael , 836 N.W.2d at 768 (imposing a 30-day suspension) ; Warpeha , 802 N.W.2d at 361 (imposing a 60-day suspension) ; In re Winter , 770 N.W.2d 463, 470 (Minn. 2009) (imposing a 120-day suspension); In re Van Liew , 712 N.W.2d 758, 758 (Minn. 2006) (order) (imposing a 90-day suspension).[7]
Among all of our relevant discipline cases, the lawyer's conduct here is most similar to Tayari-Garrett , and in that case, we suspended the lawyer for 120 days. That discipline is appropriate here. We conclude that Sea repeatedly made knowingly false statements to the court and others regarding his absence, failed to correct the previous false statements that he had made, and failed to appear at his client's trial, all in violation of Minn. R. Prof. Conduct 3.3(a)(1), 4.1, 8.4(c)-(d). Sea's misconduct, combined with the harm caused, his prior similar dishonest behavior, his probationary status, and other aggravating factors, warrants significant discipline. Therefore, consistent with our previous decisions and the specific circumstances of this case, we conclude that an indefinite suspension with no right to petition for reinstatement for a minimum of 120 days is the appropriate discipline.
Accordingly, we order that:
1. Respondent Bobby Gordon Onyemeh Sea is indefinitely suspended from the practice of law, effective 14 days from the date of this opinion, and with no right to petition for reinstatement for 120 days from the effective date of the suspension.
2. Respondent shall pay $900 in costs, pursuant to Rule 24(a), RLPR, and comply with the requirements of Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).
3. If respondent seeks reinstatement, he must comply with the requirements of Rule 18(a)-(d), RLPR. Reinstatement is conditioned on successful completion of the written examination required for admission to the practice of law by the State Board of Law Examiners on the subject of professional responsibility and satisfaction of continuing legal education requirements. See Rule 18(e)-(f), RLPR.
Suspended.
Concurring in part, dissenting in part, Thissen, J.
*40 CONCURRENCE & DISSENT
THISSEN, Justice (concurring in part, dissenting in part).
There is no question that Bobby Gordon Onyemeh Sea violated the Minnesota Rules of Professional Conduct when he did not truthfully answer the district court's questions about why he returned late to the Wright County courthouse on April 18, 2017. There is no dispute that failing to tell the truth is not only a serious legal ethics violation; it is simply wrong. The question we face, however, is the appropriate level of discipline for such a violation, and that is where I depart from the court's decision.
Sea represented a client in a felony case in Wright County.[1] As made clear by the stipulation of facts submitted by the Director and Sea, the prosecutor and Sea "were aware that pre-trial motions needed to be addressed in the morning of April 18, 2017." (Emphasis added.)
In the evening on April 17, Sea received a phone call from a relative of a former immigration client. His former client spoke little English. The relative told Sea that the former client was sitting in jail after being arrested for failure to appear in court. The relative was obviously concerned and asked Sea for help. The bail hearing was set for April 18 during the 11:00 a.m. docket in Dakota County District Court. Sea knew the family well and the Director presented no evidence that Sea would be compensated for appearing at the bail hearing. Believing that he could appear in Wright County as scheduled the next morning and still make it to Dakota County for the bail hearing at midday, Sea filed a certificate of representation in Dakota County late in the evening on April 17.
The pretrial hearing in the Wright County felony case focused on a motion to quash Sea's subpoenas of potential trial witnesses employed by Ridgeview Medical Center. The district court decided that it needed to hear from the two Ridgeview employees to resolve the motion. The two potential witnesses were not at the morning hearing, and the district court ordered further proceedings for the afternoon to allow the witnesses to get to the courthouse. The district court advised the parties that court would reconvene at 1:20 p.m. and further told the parties that the judge needed to leave by 2:25 p.m., due to a preexisting commitment.
Sometime that morning, Sea's eyeglasses broke. The record discloses nothing to refute Sea's clear testimony on that point. Consequently, he was forced to stop at his Saint Paul office to get a replacement pair of eyeglasses before heading to the Dakota County bail hearing. No evidence in the record contradicts that fact either.[2] The bail hearing was delayed as the parties waited for an interpreter for Sea's client. Needless to say, Sea was late getting back to Wright County and did not arrive before 2:25 p.m., when the judge left. As it turned out, the parties resolved many of the issues related to the motion to quash, and the felony trial proceeded as scheduled in the following days.
Sea did not inform the prosecutor, his client, or the district court that he had appeared at the Dakota County bail hearing. He blamed his tardiness solely on the *41 fact that he broke his eyeglasses. He maintained his half-truth story even when the district court gave him more chances to be fully forthcoming. In the end, the truth came out after the district court checked the court record system and saw that he had appeared with his immigrant client in Dakota County midday on April 18. But, as the joint stipulation of facts stated, Sea "asserts he was wrong in not disclosing to the Wright County District Court that he appeared in Dakota County District Court."
The Wright County District Court imposed sanctions on Sea, ordering him to pay Ridgeview $1,712.94 for his failure to appear for the afternoon session on April 18. Sea complied with the sanctions order.
The Director asserts that Sea violated Minn. R. Prof. Conduct 3.3(a)(1) (requiring candor towards a tribunal); Rule 4.1 (requiring truthfulness in statements to others); Rule 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(d) (engaging in conduct prejudicial to the administration of justice). I agree. Sea's failure to tell the prosecutor and the district court that he missed the afternoon hearing in Wright County on April 18 because he had a different midday hearing in Dakota County was a serious violation of the Rules of Professional Conduct. And a suspension from the practice of law-of any length-is a serious sanction. See Rule 15(a)(2), Rule on Lawyers Professional Responsibility (RLPR).
It is to that question-what is the appropriate sanction for Sea's violation of the Rules of Professional Conduct-that I now turn. The court accepts the referee's recommendation that Sea be suspended indefinitely from the practice of law with no right to petition for reinstatement for a minimum of 120 days. In contrast, I would exercise this court's exclusive authority and power to determine appropriate discipline and impose a 60-day suspension. See, e.g. , In re Riehm , 883 N.W.2d 223, 233 (Minn. 2016) ("We bear final responsibility for imposing discipline on Minnesota attorneys ... and we serve as the sole arbiter of the discipline to be imposed." (citations omitted) (internal quotation marks omitted)); see also Rule 15, RLPR (noting that Minnesota Supreme Court has the authority to determine appropriate sanction in lawyer-discipline cases). As the court properly notes, the sanctions we have imposed in similar cases range from a 30-day suspension to a 120-day suspension.[3]
I.
At the most fundamental level, my analysis starts with the simple observation that lawyers are humans and are therefore imperfect, a point made plain in the recent Call to Action seminar, a joint effort between our court, the Director's office, and the Minnesota State Bar Association to address the impact of lawyer well-being on client relationships, among other impacts. When I step back, what I see in this case is a lawyer who responded to a desperate call to respond to an emergency facing a former client who did not speak fluent English, who likely could not pay for a lawyer, and who was sitting in jail. He made (unwisely as it turned out) a gamble that his morning matter in Wright County would be resolved in time for him to assist the former client at a Dakota County bail hearing at midday. Then, as is the case for all of us at some point or another, life happened and made things worse. The *42 lawyer's eyeglasses broke, forcing him to stop by his office in Saint Paul on the way to Dakota County-still holding out hope that he could get back to Wright County, late, but in time to resolve the motion to quash. And I see a lawyer who knew that he made a mistake, panicked, and did not tell the whole truth to cover up a messy situation. In no way does that excuse the behavior. It was wrong. He is receiving a serious sanction. But the backstory should inform how we understand the nature of Sea's ethics violations and how we should proceed. And that backstory tells me that a sanction on the harshest end of the range of punishments we have imposed in similar cases is not right.
II.
I am also concerned with how the court employs "aggravating circumstances" in this case. I concede that aggravating circumstances exist. Sea was on probation when the Wright County incident occurred.
But to support the 120-day suspension, the referee and the court with little or no analysis pile on a slew of additional "aggravating circumstances" that are not supported in the record. Our job (and the referee's job) is not to reflexively run through the list of potential "aggravating circumstances," check the boxes that apply, and add them to the scales. Our job is to consider whether a potential aggravating circumstance is actually relevant to the case and needed to protect the public and maintain confidence in the courts. See In re Charges of Unprofessional Conduct in Panel File No. 42735 , 924 N.W.2d 266, 273 (Minn. 2019) (noting that due process applies in professional-misconduct cases); In re Gherity , 673 N.W.2d 474, 478 (Minn. 2004) ("[T]his court observes due process in exercising disciplinary jurisdiction."). I am afraid that did not happen here.
For instance, the referee and court found aggravating circumstances because Sea's misconduct was intentional. Yet we have questioned a referee's reliance on "intentional misconduct" as an aggravating factor where (as here) the rules of professional misconduct at issue require proof of intent. See In re Tayari-Garrett , 866 N.W.2d 513, 520 n.4 (Minn. 2015) (noting that we have " 'cautioned the Director not to "double count" the same acts of noncooperation as both additional misconduct and an aggravating factor' " (quoting In re Taplin , 837 N.W.2d 306, 313 (Minn. 2013) )); see also Minn. R. Prof. Conduct 3.3(a)(1), 4.1 (requiring a "knowing" violation in all three rules).[4] Notably and admirably, the Director acknowledged at oral argument that the intentional nature of Sea's conduct should not be considered an aggravating circumstance here. Nonetheless, the court relies on it.
The court also accepts without any analysis the referee's conclusion that Sea acted from a selfish motive. Yet, here is how the referee described Sea's "selfish motive": "[Sea] undertook an additional felony criminal representation in Dakota County when already committed to a serious felony jury trial in Wright County, with appearances occurring simultaneously." Even setting aside that the record does not support the conclusion that simultaneous appearances *43 were inevitable when Sea agreed to appear at the Dakota County bail hearing, this is a remarkable statement. The court and referee conclude that Sea acted selfishly by responding to a desperate nighttime call from a relative of a former non-English-speaking client and agreeing to help him at his bail hearing. And, importantly, there is no proof that Sea was paid or would be paid for appearing at the bail hearing. The conclusion is even more incredible when one considers that we have held that lawyers who "temporarily borrowed" a client's funds for personal use but without an intent to permanently steal the funds did not have a "selfish motive." See In re Fairbairn , 802 N.W.2d 734, 747 (Minn. 2011) (citing In re Rooney , 709 N.W.2d 263, 272 (Minn. 2006) ). The referee's conclusion makes no sense.
The court also accepts the referee's conclusion that Sea should be subject to greater sanctions merely because he is an experienced attorney. Our tendency to toss the "experienced lawyer" aggravating circumstance as just one more grain on the scale without much-or really any-analysis is not new to this opinion. We considered a lawyer's experience in the context of professional misconduct as early as 1960. In re Opacak , 257 Minn. 600, 101 N.W.2d 606, 607-08 (1960). In Opacak , we imposed more lenient discipline on a lawyer (acknowledging mitigating circumstances in today's parlance) because we were "inclined to believe that the acts complained of were the result of the respondent's lack of experience rather than a deliberate plan to deviate from the standards of his profession." Id. In the modern era, our consideration of lawyer experience as an aggravating factor starts with In re Moeller , 582 N.W.2d 554 (Minn. 1998). In Moeller , we noted in passing that the referee considered the lawyer's substantial experience in the practice of law as an aggravating factor. Id. at 560. But our analysis of aggravating factors did not mention the lawyer's experience. Id. Yet, in In re Oberhauser , we rejected the support of family and friends as a mitigating factor when balanced against the seriousness of the misconduct, a history of ethical violations, "and the fact that he was an experienced attorney." 679 N.W.2d 153, 160 (Minn. 2004).
In neither Moeller nor Oberhauser did we expressly hold that long experience as a lawyer was an aggravating factor. But, in In re Holker , we cited Moeller and Oberhauser to support (without any additional analysis) the referee's conclusion that being an experienced lawyer constitutes an aggravating factor. 730 N.W.2d 768, 775 (Minn. 2007). And the genealogical record of citations begetting citations goes on: In re Overboe , 745 N.W.2d 852, 867 (Minn. 2008) (accepting without analysis a referee's conclusion that "substantial experience" was an aggravating factor, citing Holker ); In re Lyons , 780 N.W.2d 629, 636-37 (Minn. 2010) (accepting without analysis a referee's conclusion that "substantial experience" was an aggravating factor, citing Moeller and Oberhauser ); In re Waite , 782 N.W.2d 820, 828 (Minn. 2010) (accepting without analysis a referee's conclusion that "substantial experience" was an aggravating factor, citing Moeller and Oberhauser ); In re Rebeau , 787 N.W.2d 168, 176 (Minn. 2010) (rejecting lack of prior discipline as a mitigating factor in part-and again, without any case specific analysis-because "substantial experience as a lawyer may constitute an aggravating factor," citing Overboe ); In re Fett , 790 N.W.2d 840, 851-52 (Minn. 2010) (stating that "[s]ubstantial practice in the law is also an aggravating factor because it is assumed that an experienced attorney has had an opportunity to become familiar with the law," citing Lyons and Moeller );
*44 In re Ulanowski , 800 N.W.2d 785, 802 (Minn. 2011) (accepting without analysis why it mattered in the case that "substantial practice in the law" was an aggravating factor, citing Fett ); In re Voss , 830 N.W.2d 867, 878 (Minn. 2013) (accepting without analysis a referee's conclusion that a lawyer's 35 years of experience was an aggravating factor, citing Ulanowski ); In re Harrigan , 841 N.W.2d 624, 630 (Minn. 2014) (stating that "we have previously held that substantial experience as a lawyer may constitute an aggravating factor," citing Rebeau ); In re Kennedy , 864 N.W.2d 342, 350 (Minn. 2015) (accepting without analysis a referee's conclusion that "substantial experience" was an aggravating factor, citing Rebeau ); In re Schulte , 869 N.W.2d 674, 679 (Minn. 2015) (accepting without analysis that "substantial experience" may be, and actually was, an aggravating factor, citing Rebeau ); In re Walsh , 872 N.W.2d 741, 750 (Minn. 2015) (accepting without analysis a referee's conclusion that lawyer's "experience as an attorney" was an aggravating factor but citing nothing).
In this case, neither the referee nor the court explain why it is worse for an experienced lawyer to mislead a court than it is for a newer lawyer, or how Sea's experience as a lawyer endangers the public more in this case. We expect all attorneys to abide by the Rules of Professional Conduct and a lawyer's status as an experienced attorney is-on its own-no reason to impose a harsher punishment. Rather, long legal experience must be connected in some way to the specific violation of the Rules of Professional Conduct at issue in the disciplinary action. For instance, in Fett , a lawyer faced discipline for advising a client, the attorney-in-fact for an incompetent nursing-home resident, to violate the power of attorney's prohibition on self-dealing. 790 N.W.2d at 844-45. We concluded that Fett's long legal experience, including his exclusive focus on estate planning and elder law for six years before he gave the unethical advice, made the giving of the advice more egregious. Id. at 850. He should have known better because of his experience in the field of practice. That makes sense. Here, in contrast, new lawyers know just as well as veteran lawyers that they should not mislead a court.
My basic point is this: If the director, a referee, or this court is going to apply an aggravating factor to enhance discipline, more is required than simply finding in isolation that a fact exists. The decision-maker should explain why that fact matters in the particular case-why that fact matters to protect the public and maintain the public's trust in the interests of the judicial system.
Finally, the court considers Sea's "lack of remorse" to be an aggravating factor. In the joint stipulation of facts, however, Sea expressly asserted that "he was wrong in not disclosing to the Wright County District Court that he appeared in Dakota County District Court." Further, the referee specifically found that Sea "acknowledged that he should have told the Wright County District Court that he was in Dakota County ...." Sea also paid $1,712.94 in sanctions for missing the afternoon Wright County hearing, acknowledging his responsibility for interfering with the progress of the case.
The referee and the court nonetheless find lack of remorse because Sea denied that his statement that he was late because he broke his eyeglasses was false. I find this incorrect for two reasons. First, the statement was not false. He was late at least in part because his eyeglasses broke. Combined with his acknowledgement that he was wrong for failing to tell the court that he was in Dakota County for a midday hearing, a nuanced view of Sea's position is that he told the truth about his broken *45 eyeglasses and he misled the court about Dakota County. In my view, the key inquiry about remorse should focus on the portion of an attorney's statement or omission that is actually misleading. Here, Sea admitted wrongdoing for the portion of his statements that was actually misleading-that he failed to acknowledge the Dakota County hearing in response to the district court's questions.
Second, a primary basis for the referee's "lack of remorse" finding is Sea's pleading answering the Director's allegations. I find it troubling from a due-process perspective that the court is imposing a harsher sanction on a lawyer for asserting in an official pleading a good-faith defense. We should not abide by a system that disciplines a person more harshly for defending himself against the power of a State actor, but should put the burden where it properly rests.
III.
One may ask why a two-month difference in suspension length matters. To any practitioner-and particularly a solo practitioner like Sea-two months without a way to earn an income is not at all insignificant. Moreover, if a lawyer is suspended for a period of more than 90 days, the lawyer must petition for reinstatement, undergo an investigation by the Director inquiring into the "appropriateness of the ... reinstatement" and obtain a recommendation on reinstatement from a panel of the Board of Professional Responsibility. Rule 18(a)-(c), RLPR. After that, the lawyer must appear before us and we may grant the reinstatement petition or deny it. Rule 18(d), RLPR. In contrast, the default rule is that a lawyer suspended for 90 days or less is reinstated upon the filing of an affidavit that he has satisfied the conditions of reinstatement. Rule 18(f), RLPR ("Unless otherwise ordered by this Court, [the petition, investigation, and hearing requirements] shall not apply to lawyers who have been suspended for a fixed period of ninety (90) days or less."). No investigation. No panel recommendation. No hearing before us. Consequently, by choosing to impose a 120-day suspension, the court is imposing a much more significant sanction on Sea than a mere 60 days of suspension. And based on the facts in the record, including the backstory leading up to the afternoon of April 18, I would hold that the protection of the public and maintenance of public trust in our courts do not require us to exercise the additional supervisory functions over Sea set forth in Rule 18(a)-(d), RLPR. I therefore respectfully dissent from the court's imposition of a 120-day suspension.

The dissent contends that "there is no dispute" that Sea's eyeglasses broke or that he needed to go to his office in Saint Paul. The referee did not include a specific finding regarding whether or not Sea's glasses were broken, but did state in his memorandum that "[Sea] did not experience any problem with his eyeglasses as he alleged."

Sea does not challenge the referee's finding that he violated Minn. R. Prof. Conduct 8.4(d) by failing to appear and delaying the litigation.

The dissent claims this to be a "half-truth story," but the referee found no truth in Sea's story.

The dissent invites our court to reconsider the use of attorney experience as an aggravating factor in light of the history of the court's use of experience as an aggravating factor. Given that the presence or absence of this sole aggravating factor will not materially affect the discipline to be imposed here, we decline to reconsider the use of attorney experience as an aggravating factor either in this case or more generally.

In his brief, Sea asserts that his Dakota County appearance was in response to a late night phone call, relying on some of the circumstances surrounding that phone call, on which the dissent also relies. None of those assertions are supported by either the record in this case or specific findings of the referee. But even if we credit these assertions of sympathetic circumstances, Sea has not met his burden to show that the referee clearly erred. Sea intentionally "made ... a gamble" and put his personal needs, and the needs of others, ahead of the needs of his existing client, and failed to keep a commitment to that existing client.

The referee found that
[Sea] does not recognize the wrongful nature of his misconduct, refused to acknowledge committing any wrongdoing and failed to exhibit genuine remorse for his misconduct .... [Sea] acknowledged that he should have told the Wright County District Court he was in Dakota County, ... but continued to deny his statements were false ....

The dissent argues that our precedent does not support a 120-day suspension based on the facts in this case. Certainly, we have imposed a range of discipline in false-statement cases. But it is important to remember that the conduct here was particularly egregious; among other consequences, as the trial judge noted in her testimony at the disciplinary hearing, the client was left alone during court proceedings in his criminal case, for an extended period of time, with no knowledge of when, or if, his lawyer would return.

The client he represented in that felony case did not file the legal ethics complaint that is now before us.

The referee appended a brief memorandum to his extensive and detailed findings of fact and asserted that "upon evaluation of all [the] evidence [Sea] did not experience any problem with his eyeglasses as he alleged." This appended assertion finds no support in the record and is clearly erroneous (Sea showed the broken glasses to the district court!).

In fact, we have even imposed a public reprimand as a sanction where an attorney made misrepresentations to judicial officers. See In re Novak , 856 N.W.2d 97, 97 (Minn. 2014) (order).

Neither Minn. R. Prof. Conduct 8.4(c), which prohibits a lawyer from "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation," nor Rule 8.4(d), which prohibits a lawyer from "engag[ing] in conduct that is prejudicial to the administration of justice," requires proof of intent. But the conduct underlying Sea's violation of Rules 8.4(c) and (d) is his intentionally misleading statements to the district court. Imposing higher discipline based on the intentional nature of Sea's conduct is double counting with regard to Rules 8.4(c) and (d) as well.