STATE OF MINNESOTA

IN SUPREME COURT

A14-2061

Original Jurisdiction                                               Per Curiam

In re Petition for Disciplinary Action
against Dale Allen Hansen, a Minnesota                    Filed:  August 5, 2015
Attorney, Registration No. 217840                        Office of Appellate Courts

_____

Martin A. Cole, Director, Nicholas P. Slade, Assistant Director, Office of Lawyers
Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Dale Allen Hansen, Saint Paul, Minnesota, pro se.
_____

S Y L L A B U S

Respondent's improper communication with an unrepresented person, trust
account violations, and failure to cooperate with the Director's investigations while on
disciplinary probation warrant an indefinite suspension from the practice of law for a
minimum of 90 days and the requirement that respondent petition for reinstatement.

O P I N I O N

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility filed a petition
for disciplinary action against respondent Dale Allen Hansen, alleging that Hansen
committed misconduct by improperly communicating with an unrepresented person,
violating trust account requirements, and failing to cooperate with the Director's

1

investigations while on disciplinary probation. Upon the Director's motion, we deemed the allegations in the petition admitted when Hansen did not file an answer to the petition. The only issue before us, therefore, is the appropriate discipline. We conclude that an indefinite suspension from the practice of law, for a minimum of 90 days, with the requirement that Hansen petition for reinstatement, is the appropriate discipline for Hansen's misconduct.

Hansen has been licensed to practice law in Minnesota since October 1991. In August 2013, Hansen and the Director executed a stipulation for 2 years of private probation based, in part, on Hansen's failure to cooperate with the Director's investigation by repeatedly failing to respond to requests for information, in violation of Minn. R. Prof. Conduct 8.1(b)[1] and Rule 25, Rules on Lawyers Professional Responsibility (RLPR).[2] The chair of the Lawyers Professional Responsibility Board approved the stipulation on August 30, 2013, at which time Hansen's private probation commenced. *See* Rule 8(d)(3)(i), RLPR. The conditions of Hansen's probation required him to abide by the rules of professional conduct, to cooperate fully with the Director's

---

[1] Minnesota Rule of Professional Conduct 8.1(b) provides that a lawyer "in connection with a disciplinary matter" shall not "fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6."

[2] Rule 25, RLPR, provides, in part, that a lawyer subject to an investigation or proceeding has the duty to cooperate with the Director by complying with reasonable requests, including requests to "[f]urnish designated papers, documents or tangible objects" and to "[f]urnish in writing a full and complete explanation covering the matter under consideration."

Office in its efforts to monitor compliance with his probation, and to timely respond to the Director's correspondence.

The Director filed the instant petition for disciplinary action on December 4, 2014, while Hansen's probation was in effect. Because Hansen did not respond to the petition, we deemed the Director's allegations admitted. *See* Rule 13(b), RLPR. The admitted misconduct falls into three categories: communicating with an unrepresented person, trust account violations, and failure to cooperate with disciplinary investigations.

First, in 2011, Hansen met with K.L. and K.L.'s husband, both of whom were seeking a dissolution of their marriage. K.L. believed that Hansen was representing both her and her husband at that time, but Hansen in fact was representing only K.L.'s husband. Hansen violated Minn. R. Prof. Conduct 4.3[3] by communicating with an unrepresented person and failing to correct K.L.'s misunderstanding of Hansen's role in the matter.

---

[3]     Minnesota Rule of Professional Conduct 4.3 provides as follows:

In dealing on behalf of a client with a person who is not represented by counsel; (a) a lawyer shall not state or imply that the lawyer is disinterested; (b) a lawyer shall clearly disclose that the client's interests are adverse to the interests of the unrepresented person, if the lawyer knows or reasonably should know that the interests are adverse; (c) when a lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding; and (d) a lawyer shall not give legal advice to the unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of the unrepresented person are or have a reasonable possibility of being in conflict with the interests of the client.

3

Second, Hansen committed trust account violations. From September 2013 through at least July 2014, Hansen failed to maintain the necessary trust account books and records, in violation of Minn. R. Prof. Conduct 1.15(h)-(i), and Appendix 1 thereto.[4] Between September 17, 2013, and February 3, 2014, Hansen overdrew his trust account at U.S. Bank on multiple occasions. This resulted in negative balances, the largest of which was $394.26, in violation of Minn. R. Prof. Conduct 1.15(h), and Appendix 1 thereto.[5] Additionally, Hansen either deposited funds belonging to his law firm into the trust account, in violation of Minn. R. Prof. Conduct 1.15(a), or deposited funds belonging to a client into his business account, in violation of Minn. R. Prof. Conduct 1.15(c)(5).[6] Hansen's failure to maintain the required trust account books and records

---

[4] Minnesota Rule of Professional Conduct 1.15(h) provides that "[e]very lawyer engaged in private practice of law shall maintain or cause to be maintained on a current basis books and records sufficient to demonstrate income derived from, and expenses related to, the lawyer's private practice of law . . . ." Further, Appendix 1 to the Rules lists the books and records that are required pursuant to Rule 1.15(h). Paragraph I(3)(a) of the Appendix provides, "For every trust account transaction, attorneys must record . . . the amount, the payee and check number (for disbursements), the purpose of the transaction, and the balance of funds remaining in the account on behalf of that client matter." Minnesota Rule of Professional Conduct 1.15(i) requires every lawyer to certify that the lawyer maintains books and records as required by paragraph (h).

[5] Paragraph I(3)(a) of Appendix 1 to the Rules provides that "[a]n attorney shall not disburse funds from the trust account that would create a negative balance on behalf of an individual client matter."

[6] Minnesota Rule of Professional Conduct 1.15(a) provides in part that "[n]o funds belonging to the lawyer or law firm shall be deposited" in a client trust account. Minnesota Rule of Professional Conduct 1.15(c)(5) requires a lawyer to "deposit all fees received in advance of the legal services being performed into a trust account and withdraw the fees as earned."

prevented the Director from determining which of these alternative scenarios actually occurred and from excluding the possibility that Hansen had initially misappropriated client funds for personal use.

Third, Hansen failed to cooperate with the Director's investigation into both matters described above. In the K.L. matter, the Director asked multiple times for a copy of Hansen's retainer agreement with K.L.'s husband, which Hansen repeatedly failed to provide. At one point, Hansen suggested the agreement existed but expressed a concern that it was protected by client confidentiality, and later said he was waiting for his client to sign a release. After months of delay, Hansen admitted that no written retainer agreement existed. Hansen also did not respond to a District Ethics Committee report or to two follow-up letters from the Director.

In the trust account matter, the Director asked Hansen multiple times for a written explanation of an overdraft, to which Hansen either did not respond or responded by saying he would send the Director all the necessary documents but then failed to do so. The Director sent Hansen a notice of investigation in March 2014 requiring him to provide, within 14 days, trust account books and records from September 2013 through the most recent month available. Hansen did not respond. The Director sent multiple additional requests, by phone and by letter, over the next several months, to which Hansen also did not respond. Hansen finally admitted, at a meeting on July 28, 2014, that he had not maintained any records or ledgers for his U.S. Bank trust account. At that time, he signed a release permitting the Director's office to obtain copies of his account

statements from U.S. Bank. Hansen subsequently failed to timely provide answers to additional written questions from the Director.

Based on Hansen's failures to cooperate with the Director's investigations into both the K.L. and trust account matters, Hansen violated Minn. R. Prof. Conduct 8.1(b) and Rule 25, RLPR.

We turn now to the question of the appropriate discipline for Hansen's misconduct. The Director argues that the appropriate discipline is an indefinite suspension with no right to petition for reinstatement for 6 months. Hansen argues that the appropriate discipline is a 30-day suspension and a period of supervised probation.

Discipline for professional misconduct is not designed "to punish the attorney, but rather to protect the public, to protect the judicial system, and to deter future misconduct." *In re Plummer*, 725 N.W.2d 96, 98 (Minn. 2006). In imposing discipline, we are guided by four factors: "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Nelson*, 733 N.W.2d 458, 463 (Minn. 2007). We also consider "similar cases for guidance, but impose discipline on a case-by-case basis after considering both aggravating and mitigating circumstances." *Plummer*, 725 N.W.2d at 99.

We look first at the four relevant factors in determining the appropriate discipline. As to the nature of the misconduct, failing to respond to a disciplinary investigation "is serious misconduct and in itself generally warrants suspension." *In re Hoedeman*, 620 N.W.2d 714, 717 (Minn. 2001). Hansen failed to respond to most of the Director's

requests, though he did eventually agree to an in-person meeting at which he provided some information. Although " [w]e have imposed sanctions less severe than suspension on attorneys who cooperate belatedly or partially," *id.* at 718, Hansen's minimal cooperation does not warrant a lesser sanction. Hansen was on probation when he failed to cooperate, and therefore he was required to take "particular care to cooperate with" the Director's investigation. *Id.* As to the underlying misconduct, maintenance of proper trust account records is "one of the fundamental responsibilities of a practicing attorney because it is the only method for maintaining the identity of the client's money." *In re Hartke*, 529 N.W.2d 678, 680 (Minn. 1995). Further, it is important that attorneys avoid "taking advantage of unrepresented parties when acting on behalf of a client." *See Olson v. Snap Prods., Inc.*, 183 F.R.D. 539, 545 (D. Minn. 1998).

When considering the cumulative weight of the violations, "[w]e distinguish between a 'brief lapse in judgment' or 'a single, isolated incident' and 'multiple instances of mis[conduct] occurring over a substantial amount of time,' " with the latter warranting more severe discipline. *In re Murrin*, 821 N.W.2d 195, 208 (Minn. 2012) (second alteration in original) (quoting *In re Fairbairn*, 802 N.W.2d 734, 743 (Minn. 2011)). Hansen committed multiple instances of misconduct over a substantial amount of time. He overdrew his trust account multiple times over a period of several months, he failed to maintain trust account books and records for several months, and he failed to cooperate with the Director's investigation into two separate matters over several months. Further,

7

the violations occurred while Hansen was on probation for previous misconduct,[7] which adds to their overall weight. *See In re Q.F.C.*, 728 N.W.2d 72, 78 (Minn. 2007) (noting that committing offenses while already on probation "tends to undermine [an] argument" that the cumulative weight was not substantial).

Next, assessing the harm to the public and the legal profession "requires consideration of 'the number of clients harmed [and] the extent of the clients' injuries.' " *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011) (alteration in original) (quoting *In re Randall*, 562 N.W.2d 679, 683 (Minn. 1997)). Here, there is no evidence that any clients were harmed because of Hansen's misconduct, although Hansen's failure to keep the required trust account books and records prevented the Director from determining whether Hansen misappropriated client funds. The bank in which Hansen maintained his trust account, however, sustained a loss in the amount of the overdrafted funds. The proper maintenance of trust accounts is important to the legal profession because "it serves to protect the client and avoid even the appearance of professional impropriety." *In re Beal*, 374 N.W.2d 715, 716 (Minn. 1985). Further, the failure to cooperate "harm[s] the legal profession by undermining the integrity of the attorney disciplinary system" and by "weaken[ing] the public's perception of the legal profession's ability to self-regulate." *In re Brost*, 850 N.W.2d 699, 705 (Minn. 2014) (first alteration in original) (citations omitted).

---

[7] Hansen correctly notes that his Rule 4.3 violation in the K.L. matter occurred in 2011, prior to his probationary period. His trust account violations, however, as well as his failure to cooperate with the Director, all occurred while he was on probation.

Finally, we look to similar cases to "ensure that our disciplinary decision is consistent with prior sanctions." *In re Nathanson*, 812 N.W.2d 70, 80 (Minn. 2012). Ultimately, however, we determine the proper discipline "based on the unique facts and circumstances of each case." *In re Rebeau*, 787 N.W.2d 168, 174 (Minn. 2010).

In support of the Director's position that Hansen should be indefinitely suspended with no right to petition for reinstatement for 6 months, the Director cites *In re Meidinger*, 848 N.W.2d 235 (Minn. 2014) (order). In that case, the attorney completely failed to respond to the Director's investigation into whether she had deposited client funds into a client trust account, and the attorney did not submit a brief on the appropriate discipline to be imposed. We accepted the Director's recommendation of an indefinite suspension for a minimum of 6 months. *See id.* at 235. Unlike the attorney in *Meidinger*, Hansen in his brief contests the amount of discipline the Director seeks.

In support of his argument for lesser discipline, Hansen cites *In re Hechter*, in which an attorney who failed to maintain the required trust account books and records was publicly reprimanded and placed on probation for 2 years. 860 N.W.2d 680, 681 (Minn. 2015) (order). Hansen concedes, however, that discipline beyond that imposed in *Hechter* "is required in the form of punishment," because he failed to cooperate with the Director's investigations while on probation for previous misconduct. To support his argument that a 30-day suspension is appropriate, Hansen cites *In re Fitzpatrick*, in which we suspended an attorney for 30 days who, while on disciplinary probation, forged a client's signature on a document with the client's knowledge and filed that document with the court. 859 N.W.2d 526, 526 (Minn. 2015) (order). *Fitzpatrick*, however, did not

9

involve a failure to cooperate with a disciplinary investigation, and the misconduct there involved a single incident. *See id.* Therefore, Hansen's misconduct calls for a more severe sanction.

We have often suspended, for 90 days, attorneys who have committed similar misconduct. *See, e.g.*, *In re Ellenbecker*, 825 N.W.2d 117, 117 (Minn. 2012) (order) (imposing a 90-day suspension for failure to maintain trust account books and records, misuse of a trust account, failure to cooperate with the Director's investigation, and a pattern of client neglect); *In re Aitken*, 787 N.W.2d 152, 155 (Minn. 2010) (imposing a 90-day suspension for failure to cooperate with the Director's investigation, committing forgery, and making false statements); *In re Swokowski*, 767 N.W.2d 3, 3, 5 (Minn. 2009) (order) (imposing a 90-day suspension for failure to cooperate with the Director's office, failure to maintain trust account books and records, neglecting three clients, and assisting in the unauthorized practice of law); *In re Ranum*, 611 N.W.2d 344, 344-45 (Minn. 2000) (order) (imposing a 3-month suspension for failure to maintain trust account books and records, misuse of a trust account, tax violations, and other misconduct). A similar 90-day suspension is warranted here.

Hansen's misconduct, however, is aggravated because he committed much of it while he was on probation. Attorneys on probation are "obligated to take particular care to cooperate with a disciplinary investigation." *In re Hoedeman*, 620 N.W.2d at 718. Hansen repeatedly failed to live up to that obligation. We therefore conclude that Hansen must demonstrate his fitness to return to the practice of law by complying with the petition and hearing requirements of Rule 18(a)-(d), RLPR.

10

Accordingly, we order that:

1.      Respondent Dale Allen Hansen is indefinitely suspended from the practice of law, effective 14 days from the date of the filing of this opinion, and is ineligible to petition for reinstatement for a minimum of 90 days from the effective date of the suspension;

2.      Respondent shall comply with the requirements of Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals), and shall pay $900 in costs pursuant to Rule 24, RLPR.

3.      Respondent may petition for reinstatement pursuant to Rule 18(a)-(d), RLPR. Reinstatement is conditioned on successful completion of the professional responsibility portion of the state bar examination and satisfaction of continuing legal education requirements pursuant to Rule 18(e), RLPR.