STATE OF MINNESOTA

IN SUPREME COURT

A24-0509

Original Jurisdiction                                                    Per Curiam

In re Petition for Disciplinary Action Against          Filed: October 15, 2025
Samuel A. McCloud, a Minnesota Attorney,            Office of Appellate Courts
Registration No. 0069693.

_____

Susan M. Humiston, Director, Deanna N. Natoli, Senior Assistant Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Samuel A. McCloud, Palm Bay, Florida, pro se.

_____

S Y L L A B U S

Disbarment is the appropriate discipline for an attorney who repeatedly neglected a client matter; failed to communicate with the client, in part, by failing to inform his client of plea offers; made a knowingly false statement to a court; and kept an unearned portion of a flat fee; as well as when several aggravating factors are present, including an extensive history of professional discipline for similar misconduct.

Disbarred.

1

O P I N I O N

PER CURIAM.

Respondent Samuel A. McCloud has a long history of professional discipline and is currently suspended from the practice of law as a result of two prior disciplinary actions. This case arises out of his representation of a client charged with driving while impaired (DWI). The Director of the Office of Lawyers Professional Responsibility (Director) brought a petition for disciplinary action alleging that McCloud repeatedly neglected the matter; failed to communicate with his client, in part, by failing to inform him of plea offers; made a knowingly false statement to a court; and kept an unearned portion of a flat fee. The referee concluded that the Director proved that McCloud committed the misconduct alleged in the petition and that several aggravating factors were present. Because neither party ordered a transcript, the referee's findings of fact and conclusions that McCloud violated the Minnesota Rules of Professional Conduct are conclusive. Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR). The only question before us is the appropriate discipline to impose. We conclude that the appropriate discipline is disbarment.

**FACTS**

The referee found the facts set forth below. McCloud was admitted to practice law in Minnesota in April 1977. He has almost exclusively practiced criminal law, with DWI cases making up much of his practice. McCloud has a lengthy history of professional discipline beginning in 1986. He has been privately disciplined eight times, receiving seven admonitions and one private probation. In addition, we have publicly disciplined

2

McCloud four times, issuing one public reprimand and three suspensions. McCloud's prior misconduct runs the gamut of the rules governing professional conduct for attorneys. *See* Minn. R. Prof. Conduct 1.1 (competence), 1.15(a) (safekeeping funds of clients), 1.15(c)(5) (depositing advance fees received into a trust account), 1.3 (diligence and promptness), 1.4 (general communication with client), 1.5(b) (communication with client regarding fees), 1.6(a) (confidentiality of information relating to representation of a client), 3.3(d) (candor towards tribunal in an ex parte proceeding), 3.4(c) (knowingly disobeying court rules), 3.5(b)(1) (ex parte communications with a member of a jury), 5.5(a) (unauthorized practice of law), 8.4(b) (committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice).[1]

The current disciplinary action arises from McCloud's representation of D.D., who was involved in a car crash in Morrison County on March 6, 2020, and was investigated for DWI. On March 17, 2020, D.D. hired McCloud to represent him with respect to the expected DWI charges. D.D. paid a flat fee of $6,000. According to the retainer agreement, the fee was "for all representation up to and including trial."

---

[1] *See In re McCloud* (*McCloud V*), 998 N.W.2d 760, 763 (Minn. 2023) (describing McCloud's disciplinary history). For consistency, we refer to McCloud's prior disciplinary actions by following the same numbering that we used in our most recent opinion regarding McCloud's discipline, *McCloud V*.

D.D. was 73 years old then and lived on a fixed income from Social Security. The $6,000 fee was about four months of D.D.'s income. D.D. had to borrow money from his daughter, S.W., to pay the fee. Throughout his representation, D.D. relied on S.W. to communicate with McCloud because D.D. did not have an email address and was not proficient in using a computer.

On April 17, 2020, D.D.'s case was filed in Morrison County District Court. In an amended citation filed five days later, D.D. was charged with two counts of misdemeanor DWI. McCloud appeared on behalf of D.D. at the August 4, 2020 arraignment but did not file a certificate of representation as required by Minnesota General Rule of Practice 703.[2]

Because there was no certificate of representation, the Assistant Morrison County Attorney who initially handled D.D.'s case (the first prosecutor) did not know that McCloud represented D.D. and sent a letter directly to D.D. on August 6, 2020. Among other information, the letter made an offer that would have allowed D.D. to plead guilty to one misdemeanor DWI charge and serve no jail time. The offer was valid only until the pretrial hearing. D.D. did not understand the letter, so he and S.W. contacted McCloud to ask about it. McCloud responded that he did not have the documents that D.D. was asking about, so S.W. emailed them to him. McCloud never responded to that email or followed up with D.D. or S.W. to explain the plea offer or any of the other information in the letter,

---

[2] Minn. Gen. R. Prac. 703 requires that "[i]n any criminal case, a lawyer representing a client, other than a public defender, shall file with the court administrator on the first appearance a 'certificate of representation,' in such form and substance as a majority of judges in the district specifies."

which also included discovery information and a notice that D.D.'s driver's license was revoked.

On August 21, 2020, McCloud filed a certificate of representation in the matter. The certificate, however, stated that he represented D.D. on a charge of "GROSS MISD. REFUSAL OF TESTING," when the only charges brought against D.D. at that time were misdemeanor DWI charges.

In September 2020, McCloud filed a motion to dismiss the case, but no hearing took place. The case was not set for a pretrial conference until February 24, 2021.

On the day of D.D.'s pretrial conference, we issued an opinion in one of McCloud's prior discipline cases, suspending McCloud for a minimum of 60 days, effective March 10, 2021. *In re McCloud (McCloud II)*, 955 N.W.2d 270, 282 (Minn. 2021). We required McCloud to file and serve proof of successful completion of the Multistate Professional Responsibility Examination (MPRE) within one year of the date of the opinion. *Id.* at 283. We also provided that upon reinstatement, McCloud would be placed on supervised probation for two years. *Id.* McCloud notified the Morrison County Attorney's Office of his suspension, but he did not notify D.D.[3] We conditionally reinstated McCloud on May 10, 2021.

On May 14, 2021, the first prosecutor emailed McCloud to renew the offer for D.D. to plead guilty to a misdemeanor DWI charge. The first prosecutor stated that if D.D. did not accept the offer, the misdemeanor matter would be dismissed and a gross misdemeanor

---

[3] The referee did not make a finding about whether McCloud informed the court of his suspension.

complaint, including a test refusal count, would be filed. This offer was to be held open until May 21, 2021, at 4:30 p.m. McCloud did not tell D.D. about the offer and never responded to the first prosecutor's email.

On July 28, 2021, the prosecution dismissed the misdemeanor charges and noted that it would charge D.D. with a higher-level offense. McCloud did not inform D.D. of this development.

In the 15 months in which D.D.'s misdemeanor case was pending, McCloud never spoke to the first prosecutor, despite that prosecutor's repeated attempts to contact him. The first prosecutor later testified at McCloud's disciplinary hearing that she was frustrated with McCloud's lack of communication but may have considered leaving the plea offer open if McCloud had contacted her even after the deadline. The first prosecutor also testified that it was "really abnormal" for a misdemeanor case in Morrison County to last as long as this one had.

On July 30, 2021, the Morrison County Attorney's Office filed a new complaint charging D.D. with one count of gross misdemeanor DWI test refusal and one count of misdemeanor DWI. D.D. was scared when he received the complaint in the mail. D.D. contacted McCloud, who told him not to worry and said, "they do it to everyone."

On November 16, 2021, McCloud filed a letter with the court asking that the settlement conference scheduled for the following day be waived or, in the alternative, held via Zoom. In this letter, McCloud stated that he and a second prosecutor on the new case "had a lengthy conversation today in an effort to settle the above matter. We were unsuccessful." This statement was false, which McCloud knew because no such

6

conversation had taken place. McCloud had not had any contact with the second prosecutor about the gross misdemeanor complaint at that point.

On November 19, 2021, the second prosecutor emailed McCloud with another offer for D.D. to plead guilty to the misdemeanor count and have the gross misdemeanor count dismissed. This offer was open until January 2, 2022. McCloud responded that he would talk to his client and respond as soon as possible. But McCloud never communicated this offer to D.D., and the deadline passed without any response to the offer.

Having received no response to the plea offer, the second prosecutor called McCloud in late January. When the second prosecutor stated that he was calling about D.D.'s case, McCloud asked, "Who's that?" When informed that it was his client, McCloud asked, "What did he do?" When the second prosecutor explained that he was charged with DWI, McCloud responded, "He's innocent" and said that they wanted a trial. This conversation, as well as other events in the history of this case, made the second prosecutor concerned about the quality of McCloud's representation of D.D.

On February 4, 2022, the second prosecutor contacted S.W. He explained the plea offer and wrote, "you are free to do whatever you want going forward," and that "my goal here is to ensure that your Dad knows he has the opportunity to resolve the case if he choses [sic] to do that." After speaking with S.W., D.D. terminated McCloud's services. At D.D.'s request, S.W. emailed McCloud to inform him that D.D. was terminating the representation and to request that McCloud return any unearned amount of the $6,000 flat fee. McCloud did not respond to S.W.'s email and, to the date of the referee's report, provided no refund to D.D.

On March 9, 2022, D.D. pled guilty to fourth-degree DWI, and the gross misdemeanor test refusal charge was dropped and the jury trial cancelled. D.D.'s driver's license was suspended for the nearly two years that this case was pending.

On March 10, 2022, we issued an order related to *McCloud II*, denying McCloud's motion to extend the time limit to successfully complete the MPRE and revoking his conditional reinstatement. Under our order, McCloud could apply for reinstatement after filing proof that he successfully completed the MPRE. There is no indication in the record that McCloud has completed the MPRE, and as of the date of this opinion, this suspension remains in effect.

On June 8, 2022, the Director initiated an unrelated disciplinary action that alleged, among other misconduct, that McCloud engaged in the unauthorized practice of law during his 2021 suspension.[4] *In re McCloud (McCloud V)*, 998 N.W.2d 760, 762 (Minn. 2023). On December 20, 2023, we imposed an indefinite suspension with no right to petition for reinstatement for 90 days.[5] *Id.* at 771. McCloud has not petitioned for reinstatement and is currently suspended.

On March 28, 2024, the Director initiated the present case. The referee held an

---

[4]     The Director did not receive D.D.'s complaint until after bringing this petition.

[5]     In deciding how this suspension would interact with McCloud's previous suspension, we declined to adopt the referee's recommendation that the 2023 suspension should not begin until McCloud submits proof of passing the MPRE. *McCloud V*, 998 N.W.2d at 771. We did, however, order that passing the MPRE would be a condition for reinstatement from the 2023 suspension. *Id.* at 771–72. We also departed from the general rule that applies to suspensions of 90 days or less and required McCloud to seek reinstatement through the process outlined in Rule 18(a)–(e), RLPR, rather than by affidavit under Rule 18(f), RLPR. *McCloud V*, 998 N.W.2d at 770–71.

evidentiary hearing on September 11 and 12, 2024, in which McCloud participated remotely. On October 10, 2024, the referee made the findings of fact described above and concluded that the Director had proven by clear and convincing evidence that McCloud violated Minn. R. Prof. Conduct 1.3 (diligence and promptness in client representation), 1.4(a)(2)–(3) and (b) (communication with and explanation to client), 1.5(b)(3) (payment of the unearned portion of a flat fee when representation ends before the fee is fully earned), 1.16(d) (protecting client's interests upon termination of representation, including by refunding unearned fees), 3.3(a)(1) (candor to the tribunal), 4.1 (truthfulness in statements to others), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). The referee also found several aggravating factors were present but no mitigating factors.

The Director argued before the referee—and argues before us—that McCloud should be indefinitely suspended, with no right to petition for reinstatement for 90 days. The referee agreed, although she noted that she "seriously considered recommending discipline of an indefinite suspension, with the right to petition for reinstatement after 120 days, instead of adopting the Director's conservative recommendation." McCloud has not made an argument about the discipline that should be imposed here. Instead, he attempts to relitigate the referee's findings of fact and conclusions that he violated the Minnesota Rules of Professional Conduct in his briefing to this court.

## ANALYSIS

Because neither party requested a transcript, the referee's findings of fact and "the conclusions that the referee draws from the facts, such as whether the attorney's conduct

9

violated the Rules of Professional Conduct," are conclusive. *McCloud V*, 998 N.W.2d at 765–66 (citation omitted) (internal quotation marks omitted); Rule 14(e), (RLPR). *But see In re Mollin*, 940 N.W.2d 470, 473 (Minn. 2020) ("We . . . review the referee's interpretation of the Rules of Professional Conduct, and other conclusions of law that do not rely on the referee's factual findings, de novo, whether or not a transcript is part of our record on review.") (citation omitted) (internal quotation marks omitted)). McCloud acknowledges that he did not order a transcript but maintains that he can still challenge the referee's findings and conclusions because he believes they were not based on clear and convincing evidence. That is incorrect. We have explained that, without a transcript, we cannot review the evidence supporting the referee's factual findings.[6] *In re Montez*, 812

---

[6] In his brief, McCloud may have made one argument contending that the referee incorrectly interpreted Minn. R. Prof. Conduct 1.5(b)(3) and 1.16(d) when she concluded that McCloud violated these rules by failing to refund the unearned portion of D.D.'s flat fee. McCloud claims that the Director did not prove he violated these rules because he "was expecting a fact hearing so [he] could present [his] evidence as to what [he] felt [he] owed, if anything" and that his "offer to go to binding arbitration thru the procedure established by the Board was turned down." To the extent that McCloud is arguing that an attorney cannot violate Rule 1.5(b)(3) or 1.16(d) until fee arbitration has been completed, this is a question of law that would warrant de novo review. *See Mollin*, 940 N.W.2d at 473 (explaining that we review the referee's interpretation of the Rules of Professional Conduct de novo even when no transcript has been ordered). This argument, however, fails. Both rules impose an affirmative duty on attorneys to return unearned fees. *See* Minn. R. Prof. Conduct 1.5(b)(3) (stating that if "a client has paid a flat fee . . . and the lawyer-client relationship is terminated before the fee is fully earned, the lawyer shall refund to the client the unearned portion of the fee," and that "[i]f a client disputes the amount of the fee that has been earned, the lawyer shall take reasonable and prompt action to resolve the dispute"); Minn. R. Prof. Conduct 1.16(d) ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . refunding any advance payment of fees or expenses that has not been earned or incurred."). This duty imposed on attorneys is unconditional and is distinct from a lawyer's obligation to comply with mandatory procedures established for

N.W.2d 58, 66 (Minn. 2012).

The only question that remains is what discipline should be imposed. We place "great weight on the referee's recommended discipline, but we retain ultimate responsibility for determining the appropriate sanction." *In re Nwaneri (Nwaneri I)*, 896 N.W.2d 518, 525 (Minn. 2017). In deciding what discipline to impose, we have held that the purposes of disciplinary sanctions are not to punish the attorney but "to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Oberhauser*, 679 N.W.2d 153, 159 (Minn. 2004). We consider four factors when determining the appropriate discipline to impose: (1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession. *In re Hansen*, 868 N.W.2d 55, 59 (Minn. 2015). We also consider any aggravating and mitigating factors and seek to impose discipline consistent with similar cases. *Id.*

First, we consider the nature of McCloud's misconduct. *Id.* McCloud's misconduct falls into three main categories: (1) neglecting D.D.'s case; (2) retaining unearned fees; and (3) making a false statement to a court. The nature of each category of misconduct is discussed in turn.

The first category of McCloud's misconduct is a pattern of failing to diligently represent and communicate with D.D., in violation of Minn. R. Prof. Conduct 1.3 and

---

the resolution of fee disputes, such as an arbitration or mediation procedure established by the bar. Minn. R. Prof. Conduct 1.5 cmt. 9. Even when such procedures are voluntary, a lawyer is encouraged to "conscientiously consider submitting to it." *Id.*

1.4(a)(2)–(3) and (b). These rules collectively establish a duty to communicate plea offers to a client in a criminal case in a timely fashion. *See In re Eichhorn-Hicks*, 916 N.W.2d 32, 36, 39 (Minn. 2018). Attorneys are required to "act with reasonable diligence and promptness in representing a client." Minn. R. Prof. Conduct 1.3. And attorneys must "reasonably consult with the client about the means by which the client's objectives are to be accomplished" and "keep the client reasonably informed about the status of the matter." Minn. R. Prof. Conduct 1.4(a)(2)-(3). The failure to communicate a settlement offer to a client is serious misconduct and a "clear violation[] of the rules." *Eichhorn-Hicks*, 916 N.W.2d at 39.

Not only did the referee conclude that McCloud neglected D.D.'s case and failed to communicate with him, but the referee also concluded that this occurred on numerous occasions. The referee concluded that McCloud repeatedly failed to diligently represent D.D. by "taking five months to file the initial certificate of representation, failing to notify [D.D.] of plea offers before they expired, and failing to respond to the prosecutor's plea offers." In addition, McCloud frequently failed to communicate with D.D. McCloud failed to explain the nature of the initial offer to plead guilty to one count of misdemeanor DWI. He did not tell D.D. about the second offer to plead guilty to one count of misdemeanor DWI or the prosecution's intention to dismiss and re-file the case with an added gross misdemeanor test refusal charge if D.D. chose not to take the offer. McCloud did not tell D.D. when the initial misdemeanor charges were dismissed. After the gross misdemeanor complaint was filed, McCloud did not explain the nature of the charges to D.D. and he failed to inform D.D. of the plea offer the second prosecutor made related to those charges.

12

The Director argues that this repeated client neglect is part of a pattern of serious misconduct that resulted in D.D.'s case starting over with a gross misdemeanor charge. We agree. We have explained that "[a] continuing pattern of client neglect is serious misconduct often warranting indefinite suspension by itself when no evidence of mitigating circumstances is present." *In re Brooks*, 696 N.W.2d 84, 88 (Minn. 2005); *see also In re Lennington*, 969 N.W.2d 76, 83 (Minn. 2022) ("[The respondent] engaged in a pattern of neglect and non-communication in multiple client matters, which we consider serious misconduct.").

The next category of McCloud's misconduct is his failure to return unearned fees. The referee concluded that McCloud violated Minn. R. Prof. Conduct 1.5(b)(3) and 1.16(d) by "fail[ing] to return unearned fees upon termination of representation and a request for a refund, despite not completing the full scope of services agreed to." According to the retainer agreement, the $6,000 fee that D.D. paid was for "all representation up to and including trial." There is no indication in the record that McCloud has returned any portion of the fee to this day. The Director argues that this is serious misconduct. We agree. As we have explained, failure to return unearned fees is serious misconduct because clients are "deprived of the use of their funds" without explanation. *In re Taplin*, 837 N.W.2d 306, 312 (Minn. 2013).

The last category of McCloud's misconduct is his false statement to the court. The referee concluded that McCloud violated Minn. R. Prof. Conduct 3.3(a)(1), 4.1, and 8.4(c) by making the knowingly false statement to the court that he had a "lengthy conversation" with the second prosecutor about settlement.

13

Honesty and integrity are chief among the virtues the public has a right to expect of lawyers. "Any breach of that trust is misconduct of the highest order and warrants severe discipline." *In re Ruffenach*, 486 N.W.2d 387, 391 (Minn. 1992). We have repeatedly held that deliberately deceiving a court is serious misconduct that justifies severe discipline. *See, e.g.*, *In re Schmidt*, 402 N.W.2d 544, 548-49 (Minn. 1987); *Nwaneri I*, 896 N.W.2d at 525. We conclude that, as a whole, the nature of McCloud's misconduct is very serious.

Second, we consider the cumulative weight of McCloud's misconduct. *Hansen*, 868 N.W.2d at 59. We have held that multiple instances of misconduct over a substantial amount of time warrant more severe discipline than a "brief lapse in judgment or a single, isolated incident" of misconduct. *In re Murrin*, 821 N.W.2d 195, 208 (Minn. 2012) (citation omitted) (internal quotation marks omitted); *see also Oberhauser*, 679 N.W.2d at 160 ("[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline."). Given McCloud's many violations over a substantial length of time, this factor warrants more severe discipline.

Third, we consider the harm to the public. *Hansen*, 868 N.W.2d at 59. In assessing the harm to the public, "we consider the number of clients harmed [and] the extent of the clients' injuries." *In re Hulstrand,* 910 N.W.2d 436, 443 (Minn. 2018) (alteration in original) (citation omitted) (internal quotation marks omitted). Client injuries may include financial harm from the failure to refund unearned fees, as well as "delay, anxiety, distress, and loss of faith in the legal system" caused by a lawyer's neglect. *Id.*

14

McCloud caused these kinds of harm to D.D., who is on a fixed income and was financially harmed when McCloud refused to return the unearned portion of the $6,000 fee. McCloud's conduct also caused delays in D.D.'s case. D.D. ultimately pled guilty to one count of misdemeanor DWI. This offer was available early in the case, but McCloud's failure to explain or communicate this offer caused D.D.'s case to drag on for nearly two years until the prosecution contacted D.D.'s daughter directly with the offer. During this time, D.D.'s driver's license was revoked, and he had to rely on his daughter for transportation. He had to go through the booking process a second time when his original misdemeanor case was dismissed and refiled with a gross misdemeanor charge. The referee noted that in addition to pecuniary harm, McCloud caused D.D. "unnecessary worry, stress, and frustration," noting that D.D. was "really scared" when he received the gross misdemeanor complaint in the mail and "became worn out by the whole process." This factor justifies significant discipline.

Finally, we consider the harm to the legal profession. *Hansen*, 868 N.W.2d at 59. Each type of misconduct McCloud committed reflects poorly on the legal profession at large and erodes the public's confidence in the legal profession. *In re Nathanson*, 812 N.W.2d 70, 79 (Minn. 2012) (stating that "a lawyer's procrastination, neglect, and failure to communicate with a client . . . reflect adversely on the bar, and are destructive of public confidence in the legal profession." (citation omitted) (internal quotation marks omitted)); *In re Shaughnessy*, 467 N.W.2d 620, 621 (Minn. 1991) (stating that a lawyer's failure to communicate a settlement offer to a client "reflect[s] adversely on the bar, and [is] destructive of public confidence in the legal profession"); *In re Ulanowski (Ulanowski II)*,

15

834 N.W.2d 697, 703 (Minn. 2013) (stating that the failure to return unearned fees harms the legal profession because "misuse of funds 'entrusted to an attorney as a fiduciary for his clients is a breach of trust that reflects poorly on the entire legal profession and erodes the public's confidence in lawyers' " (quoting *In re Rooney*,709 N.W.2d 263, 270 (Minn. 2006))); *In re Sea*, 932 N.W.2d 28, 36 (Minn. 2019) (recognizing that attorneys who make false statements to courts harm the legal profession, as we place "great weight on the reputation of the legal community as honest and truthful"). The harm that McCloud's misconduct caused to the legal profession justifies significant discipline.

Along with the four factors discussed above, we also consider mitigating or aggravating circumstances when determining the appropriate discipline. *Hansen*, 868 N.W.2d at 59. The attorney subject to discipline bears the burden to allege and prove mitigating factors. *Ulanowski II*, 834 N.W.2d at 703. McCloud has not raised any mitigating factors, as he did not object to the Director's motion in limine to prevent him from raising mitigating factors because of incomplete discovery responses. The referee found several aggravating factors: McCloud's significant experience in the law, his extensive disciplinary history, his lack of remorse, and the intentional nature of his misconduct.

We begin by considering McCloud's significant experience practicing law. *See In re Bosse*, 951 N.W.2d 469, 483 (Minn. 2020) (explaining that we reasonably expect problems to occur less often with an experienced attorney), *reh'g denied*. McCloud has been practicing law for nearly 50 years. During his entire legal career, he has practiced criminal law, and around 75% of his clients had been charged with DWI. Not only has

16

McCloud practiced law for many years, but he also failed to communicate plea offers to his client in violation of the rules despite his significant experience as a criminal defense attorney. We conclude that this significant experience practicing law is an aggravating factor. *See In re Langree*, 9 N.W.3d 159, 172 (Minn. 2024) (explaining that the aggravating factor of substantial experience practicing law may be based on how long a person has been a lawyer or how long they have practiced in the area of law at issue in the misconduct).

Next, we consider McCloud's disciplinary history. We expect attorneys with a disciplinary history to show a renewed commitment to ethical behavior, and we consider past disciplinary actions to be an aggravating factor. *Sea*, 932 N.W.2d at 37. And even if the current misconduct now before us pre-dates when a lawyer was previously disciplined, we still consider the prior discipline to be an aggravating factor because it "reveals a pattern of misconduct, which heightens our concerns" that the lawyer practicing law poses a danger to the public. *In re Nwaneri (Nwaneri II)*, 978 N.W.2d 878, 889 (Minn. 2022). In McCloud's case, he has faced professional discipline on 12 prior occasions. Seven of these disciplinary actions resulted in admonitions, one resulted in private probation, one resulted in a public reprimand, and three resulted in suspensions.[7]

We have imposed more severe sanctions when the current misconduct is similar to prior misconduct. *In re Cutting*, 671 N.W.2d 173, 175 (Minn. 2003). McCloud's disciplinary history includes misconduct much like the misconduct here. Two of

---

[7] McCloud's most recent disciplinary action was brought after the conduct at issue in this action. *See McCloud V*, 998 N.W.2d at 760.

McCloud's admonitions involved failing to communicate with clients, and another involved lack of candor with the court. McCloud's most recent suspension also concerned his failure to diligently represent a criminal client. *See McCloud V*, 998 N.W.2d at 762. And McCloud's prior suspension for dishonest conduct related to his taxes, see *In re McCloud (McCloud I)*, 826 N.W.2d 529, 529 (Minn. 2013) (order) (suspending McCloud for intentionally concealing his income from taxing authorities and being convicted of filing a materially false federal income-tax return), is similar to his current misconduct of making a false statement to a tribunal because they both involve dishonesty. *Sea*, 932 N.W.2d at 37 (concluding that a lawyer's prior misconduct of being convicted of filing materially false federal income-tax returns was similar to his present misconduct of making false statements to a court and to others). Given this pattern—in terms of both the quantity of prior discipline and the substantial similarity between the current misconduct and prior misconduct—McCloud's disciplinary history justifies significantly more severe sanctions than would be imposed if this were his first offense.

Next, we consider McCloud's lack of remorse. *See In re Severson*, 860 N.W.2d 658, 670 (Minn. 2015) (noting that an attorney's lack of remorse can be an aggravating factor in disciplinary proceedings). The referee noted that "[t]hroughout this proceeding, respondent's position has been that fault lies with [D.D.] or [S.W.] for not asking respondent for specific information they needed, rather than it being respondent's responsibility to affirmatively provide [D.D.] with information." The referee also noted that McCloud does not recognize the wrongful nature of his conduct and "consistently maintained the position that he is entitled to retain his client's funds unless and until [D.D.]

takes the matter to legal fee arbitration." McCloud's brief to this court seems to demonstrate a similar attitude, as McCloud does not acknowledge any of the harm that his actions caused D.D. McCloud's lack of remorse is an aggravating factor that warrants more serious discipline.

The referee also considered the intentional nature of McCloud's conduct. We have recognized that the intentional nature of misconduct can be an aggravating factor. *In re Ulanowski (Ulanowski I)*, 800 N.W.2d 785, 802 (Minn. 2011). That said, we have also expressed concerns about "double count[ing]" intentionality "when the rules of professional conduct at issue require proof of intent." *In re Tayari-Garrett*, 866 N.W.2d 513, 520 n.4 (Minn. 2015) (citation omitted) (internal quotation marks omitted).

Here, the referee concluded that McCloud's intentional conduct in making a knowingly false statement to the court is an aggravating factor. The referee explained—in addressing aggravating factors—that McCloud's conduct violated Minn. R. Prof. Conduct 8.4(d), which prohibits a lawyer from "engag[ing] in conduct that is prejudicial to the administration of justice," and that this rule does not require any proof of intent. We have several concerns with this aggravating factor. The referee had not otherwise concluded that McCloud violated Rule 8.4(d), and the Director did not allege that rule violation in her petition. Moreover, the referee did conclude that this same conduct violated Minn. R. Prof. Conduct 3.3(a)(1) and 4.1, both of which require proof of intent. Both rules prohibit a lawyer from "knowingly" making "a false statement of fact." Minn. R. Prof. Conduct 3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal."), 4.1 ("In the course of representing a client, a lawyer shall not knowingly make

19

a false statement of fact or law.").  Because the intentional nature of McCloud's misconduct has already been considered in determining that he violated Rules 3.3(a)(1) and 4.1, we do not consider this intentionality again as an aggravating factor.

Along with considering mitigating and aggravating factors, we also look to similar cases to "ensure that our disciplinary decision is consistent with prior sanctions." *Hansen*, 868 N.W.2d at 60 (citation omitted) (internal quotation marks omitted).  The Director cites several cases in which we have suspended attorneys for combinations of violations that overlap with McCloud's violations in this discipline proceeding.  First, the Director points to *In re Bruggeman*, where we imposed an indefinite suspension with no right to petition for reinstatement for 90 days for the following misconduct:

> [R]epresenting clients with a conflict of interest, providing incompetent representation by naming an improper party as a defendant in a complaint and failing to properly serve defendants with the complaint, neglecting the matter, failing to communicate with the clients, forging a client's electronic signature on an affidavit and filing it with the court, making multiple knowingly false statements to the clients, failing to timely withdraw from representation, failing to provide the clients with a copy of the file upon termination of the representation, failing to inform the clients if costs they would be responsible for would be deducted before or after the contingent fee is calculated, and fabricating documents and making knowingly false statements to the Director during a disciplinary investigation.

*In re Bruggeman*, 992 N.W.2d 371, 371–72 (Minn. 2023) (order) (imposing discipline after the parties entered into a stipulation for discipline).  *Bruggeman* is similar to this case in several ways, but it differs in that the respondent in *Bruggeman* presented evidence of a mitigating factor—extreme personal stress—and had been subject to only two public reprimands.  McCloud, by contrast, presented no mitigating evidence and has a much more extensive disciplinary history, including discipline for the same type of misconduct at issue

20

in this proceeding

The Director next cites *In re Nemer*, in which we suspended an attorney for 90 days for:

> [f]ailing to properly document a cash payment received from the client; failing to demonstrate thoroughness, preparedness, and legal knowledge reasonably necessary for a representation; failing to diligently represent the client; failing to communicate with the client, causing an unreasonable delay in the resolution of the client's case proceedings; knowingly disobeying an instruction from the court; and making knowingly false and misleading statements to a court on two separate occasions; and, in a second matter, failing to clearly communicate the basis or rate of his fee in a written fee agreement, and splitting legal fees with a lawyer not in his firm without obtaining written agreement from the client about the share each lawyer would receive.

991 N.W.2d 274, 275 (Minn. 2023) (order) (imposing discipline after the parties entered into a stipulation for discipline). Although certain aspects of Nemer's misconduct are similar to McCloud's, the cases are distinguishable because Nemer's prior disciplinary history was substantially less extensive, consisting of four admonitions and one private probation.

The Director also cites several cases where we indefinitely suspended attorneys for false statements alone or primarily for false statements. The Director cites *Sea*, where we indefinitely suspended an attorney, with no right to petition for reinstatement for 120 days, for knowingly making false statements to a tribunal; making false statements to others; engaging in dishonesty, fraud, deceit, or misrepresentation; and engaging in conduct that

21

is prejudicial to the administration of justice.[8] 932 N.W.2d at 31, 39. The Director also cites *In re Winter*, where we imposed a suspension with no right to petition for reinstatement for 120 days, for knowingly making a false statement to a tribunal and to another attorney and failing to correct the false statement. 770 N.W.2d 463, 465, 470 (Minn. 2009).

When, however, attorneys commit serious misconduct after an extensive history of professional misconduct, we have also ordered disbarment. In *In re Brehmer*, we commented that "[d]isbarment is an appropriate sanction for attorneys who engage in an ongoing pattern of serious misconduct." 642 N.W.2d 431, 434 (Minn. 2002). In that case, we noted that much of the attorney's misconduct was similar to his "extensive disciplinary history." *Id.* at 432, 434. In *In re Redburn*, we agreed with the Director's recommendation to disbar an attorney whose misconduct in three client matters included "failure to communicate with three clients, failure to provide diligent representation, failure to refund $3,000 in retainer fees and account to clients for those fees, failure to inform clients of his suspension, failure to protect two clients' interests on termination of representation, failure to pay a professionally incurred debt, failure to file an affidavit with the Director's office documenting notification of clients and tribunals of his suspension, and failure to cooperate with the disciplinary investigation," noting that, "in addition, some of Redburn's actions involved dishonesty and were prejudicial to the administration of justice." 746 N.W.2d

---

[8] In *Sea*, the referee also found that Sea "delayed [a] criminal trial and caused harm to the public and legal profession by failing to appear for the pretrial hearing." 932 N.W.2d at 34.

330, 336-37 (Minn. 2008). In our decision to disbar Redburn, we noted that much of his "current misconduct [was] similar to his prior misconduct," and that "[w]e have imposed severe sanctions, including disbarment, in part because an attorney's misconduct is similar or identical to that attorney's prior misconduct." *Id.* at 337.

Based on all these considerations, we now determine the appropriate discipline. We weigh the constellation of McCloud's present misconduct and aggravating factors, including McCloud's long disciplinary history, in view of our precedent. After doing so, we conclude that the referee's recommendation of an indefinite suspension with no right to petition for reinstatement for 90 days is too lenient. We generally give "great weight" to the referee's recommended discipline. *Nwaneri I*, 896 N.W.2d at 525. But we do not agree that the appropriate discipline for acts of present misconduct should be reduced because a lawyer with a lengthy disciplinary history committed the present misconduct before he was most recently disciplined. *See Nwaneri II*, 978 N.W.2d at 889 (explaining that when the current misconduct predates prior discipline, the prior discipline is an aggravating factor because it "reveals a pattern of misconduct, which heightens our concerns" that the lawyer practicing law poses a danger to the public).

Under these circumstances, we conclude that the appropriate discipline is disbarment. McCloud's decades-long disciplinary history for similar misconduct accounts for our unusually large departure from the referee's recommended discipline. In *McCloud V,* we noted that McCloud's disciplinary history was "strikingly extensive," raising "serious questions about whether the public [would] be protected if we allow McCloud to continue to practice law." 998 N.W.2d at 769, 771. Because of this fact, we

23

departed from the general rule in place at the time, which allowed an attorney suspended for 90 days or fewer to apply for reinstatement by affidavit under Rule 18(f), RLPR, and instead required McCloud to petition for reinstatement. *McCloud V*, 998 N.W.2d at 770-71. McCloud's disciplinary history "compel[led] us to require Rule 18 reinstatement proceedings to protect the public," because of McCloud's failure to explain why the misconduct occurred, or what steps he has taken to prevent future misconduct. *Id.*

"In Minnesota we recognize that the practice of law 'is a privilege, not a right.' " *Redburn*, 746 N.W.2d at 339 (quoting *In re Swanson*, 405 N.W.2d 892, 893 (Minn. 1987)). Like other attorneys that committed serious misconduct after an extensive history of similar professional misconduct, McCloud has forfeited his privilege to practice law. Given the many and serious instances of misconduct involved here, the gravity of McCloud's extensive history of misconduct which has injured his clients and harmed the profession, and McCloud's continuing complete lack of remorse, we conclude that another suspension would not adequately protect the public, the legal profession, or deter future misconduct by McCloud or other lawyers. Under these circumstances, disbarment is the appropriate discipline.

## CONCLUSION

For the foregoing reasons, respondent Samuel A. McCloud is disbarred from the practice of law in the State of Minnesota, effective on the date of this opinion. Respondent must comply with Rule 26, RLPR (requiring notice to clients, opposing counsel, and tribunals), and must pay $900 in costs under Rule 24(a), RLPR.

Disbarred.